[Sac. No. 1054.    Department Two.—July 22, 1899.]

MARY A. BENNALLACK, Plaintiff, v. W. G. RICHARDS et al., Respondents.    SAMUEL GRANGER, Appellant.

ESTATES OF DECEASED PERSONS—SALE UNDER WILL—QUIETING TITLE —CROSS-COMPLAINT—ACCOUNTING—RECEIVER.—In an action to quiet title against the executors and heirs of a deceased person, brought by a successor in interest of a purchaser who received possession under a sale of real estate and deed thereof made by the executors, pursuant to a power in the will to sell and convey without any order of court, the executors cannot, while their disputed title and right of possession are undetermined, maintain a cross-complaint in equity against the plaintiff and the purchaser, for an accounting of the rents and profits, and for the appointment of a receiver.

ID.—VALIDITY OF SALE—DUTY OF EXECUTORS TO REPORT FOR CONFIRMATION.—The executors having made a valid contract of sale under the will, so far as they were able to bind themselves, were in duty bound to report it to the court for confirmation, which may be done at any time after the sale; and they cannot attack the validity of the sale, unless, after report thereof, the court refuses to confirm it.

ID.—ESTOPPEL OF EXECUTORS.—The executors, having placed the purchaser in possession under the sale and deed made by them, and permitted him to make large improvements thereon, cannot, while refusing to report the sale to the court for confirmation, invoke the aid of a court of equity to compel an accounting of rents and profits or to place the property in the hands of a receiver.

APPEAL from an order of the Superior Court of Nevada County appointing a receiver.    F. T. Nilon, Judge.

The facts are stated in the opinion.

A. D. Mason, for Appellant.

C. W. Kitts, J. M. Walling, and P. F. Simonds, for Respondents.

HAYNES, C.—Appeal by Samuel Granger from an order appointing a receiver.    Mary A. Bennallack, in March, 1895, commenced an action in the superior court of Nevada county against William G. Richards, Francis S. Richards and James Bennallack, as executors of the last will of Philip Richards, deceased, and William G. Richards, Francis S. Richards, and William S. Richards, personally, to quiet her title to lot 28 in block 30, in Nevada City.

A sufficient statement of facts may be made without attempting a synopsis of each different pleading.    Philip Richards, in May, 1887, died testate, seised of said lot.    His will was duly probated, and William G. Richards, Francis S. Richards, and James Bennallack, who were nominated therein as executors, were appointed and qualified as such.    Certain legacies or "money bequests" were made in the will, and the testator's brothers, Francis S. and William S. Richards, were named as residuary legatees.

The will directed that no part of the estate be sold until two years after the testator's death; that in the meantime the executors should collect the rents, and after paying taxes, et cetera, the remainder should be applied to the payment of said "money bequests."    The will further provided: "After the expiration of two years from my decease, my said executors are hereby empowered to sell at public or private sale any portion of my estate, real or personal, to such persons, on such terms, and for such sums as they may deem advisable; and all this to do and perform without any order of court whatever, and also to make, execute, and deliver any and all deeds, bills of sale, or other conveyances necessary to dispose of said estate and convert the same into money, without any order of the court, or being required to account to any court."

The lot in question was duly appraised at three thousand dollars in April, 1891, and on May 11, 1891, was sold by the executors under the power given them by the will, to Samuel Granger for the sum of three thousand three hundred and sixty-five dollars; but the sale was not then reported to or confirmed by the court, but the executors, supposing that the will gave them power to convey without a confirmation of the sale, at once executed to the purchaser a deed for said lot, received the purchase money and distributed it to the legatees under an order of the court, and the purchaser was put in possession.

In a cross-complaint filed by Francis S. Richards, one of the executors, it is alleged that said sale was never confirmed by the court, nor any order made for a conveyance; that Granger entered into possession of the lot on May 11, 1891, and remained in possession until February 9, 1893, and during that time received rents to the amount of five hundred dollars over and above all expenditures thereon; that on May 16, 1891, "Granger assigned to James Bennallack, in trust for the benefit of Mary A. Bennallack, his interest in said lot for the sum of three thousand five hundred dollars," of which he then received three thousand dollars, and the remainder he received from rents collected between that date and February 9, 1893, when he conveyed the lot to said Mary A. Bennallack, who then went into and remained in possession of the property and appropriated the rents until May 8, 1897, when she sold and conveyed the lot to Granger for the sum of three thousand five hundred dollars," and that Granger has ever since been in possession and received a rental of one hundred and six dollars per month; that in 1894 Francis S. Richards conveyed to James Bennallack all his interest as residuary legatee in said lot, and Bennallack conveyed said interest to Granger on May 8, 1897.

Said cross-complaint further alleged that about the sum of one thousand dollars remains unpaid upon the legacies; that there is not sufficient money in the hands of the executors to pay the same; that said sum of three thousand three hundred and sixty-five dollars (the original purchase money paid for said lot by Granger) was paid to legatees in 1891, by order of the court, in part payment of legacies; that during their said possession of said lot said Granger and Mary A. Bennallack each

made valuable and necessary improvements, repairs, and expenditures thereon, the value of which he does not know; alleges that they are trustees of the rents for the benefit of the estate; that an accounting is necessary, and that said Granger is a necessary party, and offered, as such executor, to make such restitution to Samuel Granger and Mary A. Bennallack as the court should direct.

The prayer is that Granger be brought in and made a party; that he and said Mary A. Bennallack be credited with the amount for which the property was sold to Granger on May 11, 1891, viz., three thousand three hundred and sixty-five dollars; also with the amounts paid by them for necessary repairs, taxes, and insurance, and charged with the amount received by them for rents, the balance to bear interest at seven per centum per annum, with annual rests.

The answer to said cross-complaint alleged that said sale and deed had been duly confirmed by order and decree of the court duly made and entered on February 19, 1895; and, after denials as to the amount of rents received, they set out particularly the repairs and improvements made upon the property, amounting to three thousand five hundred dollars, and alleged the payment of taxes amounting to about three hundred dollars, and denied that they or either of them now or ever were trustees of the rents for the estate, or ever occupied any fiduciary relation to it. This answer was filed December 29, 1897.

On March 28, 1898, W. G. Richards, as executor, served notice of a motion for the appointment of a receiver, which notice stated that it would be based upon the affidavit accompanying the notice, and the judgment-roll in the case of *Granger v. Richards et al.,* No. ――― in said court, the papers in this case, and the decision of the supreme court on the appeal heretofore prosecuted herein.

Said affidavit alleged that said estate owned said lot; that the monthly rental is one hundred and six dollars; and attacked appellant's financial responsibility.

Granger filed a counter-affidavit alleging his ownership of the lot, denying that he is irresponsible, and alleging that he owns other and known visible property in this state of great value. On May 24, 1898, a receiver was appointed, and this appeal is from the order making said appointment.

The judgment-roll referred to in said notice of motion is not set out in the transcript, nor any intimation of its purport given. The reference to the decision of this court does not give the title of the case, nor refer to any question of law or fact decided in it. We must assume, therefore, that neither were used on the hearing to sustain any allegation of fact. The original complaint (filed by Mary A. Bennallack in 1895) was stricken out on motion of defendants.

Bennallack, one of the executors, died in November, 1897. Francis S. Richards, the other surviving executor, was not made a party, either plaintiff or defendant, to the cross-complaint, though he was served with it, and his default entered for not answering.

No case was made for the appointment of a receiver. Appellant, Granger, was brought into the case by the cross-complaint, and no relief was sought against him other than an accounting for the rents and profits. The title was put in issue apparently for no other purpose than for an accounting. Appellant is in possession, but the action is not in form for the recovery of possession but solely for an accounting.

Respondents are certainly not entitled to an accounting until their title and right of possession are determined. Appellant's answer to the cross-complaint denies that the estate has title, and alleges title in himself. It is evident that without the adjudication of that question in favor of the executors they cannot be entitled to recover the rents and profits, and if the legal title is in the estate the executors may recover possession in an action of ejectment. The principal question, therefore, is one of legal and not of equitable cognizance.

High on Receivers, section 557, lays down the rule thus: "Whenever the contest is simply a question of disputed title to the property, plaintiff asserting a legal title in himself, against a defendant in possession and receiving the rents and profits under claim of legal title, equity refuses to lend its extraordinary aid by interposing a receiver, just as it refuses an injunction under similar circumstances, leaving the plaintiff to assert his title in the ordinary forms of procedure at law. . . . . A departure from the rule can only be justified upon strong grounds of judicial necessity, or in case of fraud clearly proven, or of im-

minent danger unless immediately possession is taken by the court, and the burden rests upon complainant to make out a clear case to justify the relief."

There can be no question that the executors had ample power and authority under the will to make a valid sale; but confirmation of the sale by the court was necessary to authorize a conveyance (Code Civ. Proc., sec. 1561) and to vest the title in the purchaser.

The cross-complaint alleges that the sale was never confirmed by the court, but does not allege that the sale was reported to the court and that confirmation was refused, or the sale vacated. That there was a valid contract of sale between the executors and the purchaser, subject only to confirmation by the court, I think is clearly shown by the cross-complaint, and one term or provision of that contract was supplied by the statute, viz., that they would report the sale to the court for confirmation. This court has said (*In re Pearsons*, 98 Cal. 603, 612): "The purchaser from an executor at a sale under a power in the will deals with him in making the purchase as he would with any other vendor. He makes the purchase subject to a confirmation by the court, but in all other respects he may incorporate in his contract of purchase the same terms and conditions as he would in dealing with any other agent for the sale of property, and he can repudiate his contract of purchase only for the same reasons as he could in case he had bought from another. . . . . In this state it is essential that the will shall have been admitted to probate before the power can have any validity, but in all other respects the contract of purchase and sale between the executor and his vendee is attended with the same incidents and is to receive the same construction as a similar contract between any other vendor and vendee. Prior to 1861 a sale by an executor under a power in the will was valid without any confirmation by the court. In that year the legislature amended the procedure so as to require that such sales should be confirmed by the probate court, the same as those made under its own order. The confirmation thus required is, however, for the protection of the estate, and for the purpose of determining whether the sale shall be confirmed. The scope of investigation by the court is limited to ascertaining whether the sale was legally made and fairly con-

ducted, and the sum bid was not disproportionate to the value of the property sold, and that a sum exceeding such bid at least ten per cent, exclusive of the expenses of a new sale, cannot be obtained. (Code Civ. Proc., sec. 1554.) If any of these facts exist, the court is authorized to vacate the former sale (*Estate of Durham*, 49 Cal. 490); but unless such facts are shown to the court, the court must make an order confirming the sale. (Code Civ. Proc., sec. 1554.)"

In making this sale the executors exercised and exhausted their power to deal with the property unless upon reporting the sale to the court confirmation of the sale was refused. It certainly cannot be true that executors acting under such a power may make a valid and unimpeachable contract of sale to appellant, refuse to report it to the court for confirmation in violation of a duty imposed upon them by law, and having put him in possession and permitted him to make improvements to an amount nearly or quite equal to the value of the property at the time the contract of sale was made, invoke the powers of a court of equity to compel an accounting for the rents received, doubtless largely increased by the improvements made, and have a receiver appointed to collect and retain them, to be disposed of by some future order of the court. "He who seeks the appointment of a receiver must himself come into court with clean hands." (High on Receivers, sec. 7.) The statute does not limit the time within which the executors may report the sale for confirmation. "The executor or administrator, after making any sale of real estate, must make a return of his proceedings to the court, which must be filed in the office of the clerk, at any time subsequent to the sale." (Code Civ. Proc., sec. 1552.) The duty and power to report the sale of said lot to the court for confirmation, therefore, remained and existed at the time this cross-complaint was filed, and as the fact that the sale had been made was called to the attention of the court by the allegations therein made by the executor, he might with propriety have been cited to discharge that duty by making such report. Until that is done we see no ground upon which the executors can invoke the aid of a court of equity to compel an accounting or to place the property in the hands of a receiver. I therefore advise that the order appointing a receiver be reversed.

Chipman, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order appointing a receiver is reversed.

McFarland, J., Henshaw, J., Temple, J.