[Sac. No. 1592. In Bank.—November 4, 1908.]

In the Matter of the Estate of PHILIP RICHARDS, De-
ceased. SAMUEL GRANGER, Appellant, v. W. G.
RICHARDS et. al., Executors, etc., Respondents.

NEW TRIAL—TIME FOR NOTICE OF INTENTION—NOTICE OF DECISION.—In
order that the successful party to a suit shall set the time running
in which the losing party must serve and file his notice of intention
to move for a new trial, he must serve upon him a written notice
of the decision.

ID.—SERVICE OF NOTICE OF DECISION BY MAIL—EXTENDED TIME FOR
NOTICE OF INTENTION.—When the attorney for the losing party re-
sides in another county and the notice of decision is served by mail,
the service is complete when such notice is mailed; but the losing
party, in addition to the ten days, is entitled to an additional day
for each twenty-five miles of the distance from his residence to the
county of the venue, and to such extended time as the court may
properly order within that period in which to serve and file his notice
of intention.

ID.—WAIVER OF NOTICE OF DECISION.—Though the notice of decision,
before it is served, may be waived by conduct inconsistent with the
necessity of giving it, yet no rule of waiver applies when written
notice is served by mail or otherwise. In such cases there is nothing
to waive.

ID.—APPLICATION FOR STAY OF EXECUTION ON DAY OF MAILING NOTICE
OF DECISION NOT A WAIVER.—An application to stay execution made
on the same day on which the notice of decision was mailed by
defendant to plaintiff's attorney cannot operate as waiver of service
of the notice. Such application had no relation to the matter of
moving for a new trial, and whether it was in fact made before or
after the mailing of the notice cannot affect the rights secured to
plaintiff by service of such notice in that manner, as to the time
within which the notice of intention to move for a new trial may be
served and filed.

ID.—ORDER DENYING MOTION—DISMISSAL NOT JUSTIFIED.—An appeal
from an order denying the motion for a new trial cannot be dis-
missed on the ground that the notice of motion to move for a new
trial was not served and filed within the time allowed by law, when
it appears that within the time allowed by law, the time therefor
was duly extended by order of the court until the notice was served
and filed.

ACTION TO QUIET TITLE AGAINST EXECUTORS—SALE AND DEED UNDER
WILL NOT CONFIRMED—VOID DEED.—Notwithstanding the provision
of a will that the executors may at any time after the expiration
of two years from the death of the testator "sell his real property

at public auction without any order of court whatever, or being required to account to any court," the executors had no authority to execute a deed to the purchaser without a report of the sale to the court, and a confirmation thereof, before the deed was executed, and their deed to the purchaser without confirmation is void and passed no title, and he cannot quiet such title.

ID.—ADVERSE POSSESSION—TITLE IN LITIGATION.—The purchaser cannot claim title by adverse possession, when it appears that before the lapse of five years he conveyed the property to others who brought suit to quiet title, and the property was reconveyed to him by the plaintiffs while the title was in litigation. The period of such litigation cannot be included in adverse possession.

ID.—CONFIRMATION OF TITLE BY PROBATE COURT—SETTLEMENT OF ANNUAL ACCOUNT—JUDGMENT WITHOUT JURISDICTION.—When, upon the settlement of an account, the question whether the executors had control of the property sold was presented to the court, the court had no jurisdiction upon such settlement to adjudge "that each of said deeds of real estate as executed and delivered by said executors . . . be and they are hereby adjudged and decreed to have been absolute and valid on the date when so executed and delivered, without confirmation of court."

ID.—MODE OF CONFIRMING SALE—JURISDICTION.—The law provides a particular method for the return of sales of real estate and the confirmation thereof, and provides the character of notice which shall be given in order to confer jurisdiction on the court in the proceeding to confirm. A proceeding upon the settlement of an account, not noticed as provided by law to confer jurisdiction to confirm a sale, and not purporting to confirm it, but to declare the deeds valid without confirmation, is a matter not committed to the jurisdiction of the court sitting in probate on such settlement.

ID.—ESTOPPEL IN PAIS NOT PROVED.—*Held,* that there is insufficient evidence to prove an estoppel *in pais* against the executors and residuary legatees, by reason of improvements, maintenance, and repairs of the premises with their knowledge and acquiescence.

ID.—SUCCESSION OF PLAINTIFF TO HALF OF ESTATE ON DISTRIBUTION—TRANSFER BY RESIDUARY LEGATEE—REVIEW OF DECISION.—When it appears that one of the executors entitled to one half of the estate as residuary legatee conveyed all of his rights to the plaintiff, and afterwards died, though the question of his right to succeed to one half of the residue of the estate on final distribution might properly be relegated to such distribution, yet, when the court concluded that after his death the other residuary legatee became entitled to the whole residue of the estate, the question of the correctness of its conclusion is involved in the judgment, and it is necessary to review the accuracy of its conclusion on that subject.

ID.—CONSTRUCTION OF WILL—ENUMERATED LEGACIES UNPAID—RESIDUE OF ESTATE TO PERSONS NAMED NOT INCLUDED.—Under a will providing for specific enumerated legacies, and providing that in case

of the death of any "legatees herein named," the share of such legatees should be "paid to my brother W. S. Richards," and providing that "the residue of the estate" shall go to "W. S. Richards and Francis S. Richards," the residue of the estate is not included in the legacies enumerated nor the legatees herein named, and the share of Francis Richards in the residue of the estate passed to plaintiff by his grant, who is entitled to succeed to his rights on distribution of the estate.

ID. — SPECIAL RULE OF CONSTRUCTION APPLICABLE — PROTECTION OF WORDS OF CLEAR GIFT.—The residuary interest in the estate having been granted in clear and unambiguous words to two persons named, and the grant of lapsed legacies to be paid to one of them being subsequently provided for, the well-settled rule for the construction of wills applies, that when the words of a will in the first instance indicate an intent to make a clear gift, such gift cannot be cut down by any subsequent provisions which are of indefinite or doubtful expression.

ID.—REFUSAL · OF CONFIRMATION OF SALE—FINDING UNCHALLENGED.— When the court found that on a certain date the court refused to confirm the sales, and the specifications of the defendant did not reach such finding, it must stand as unchallenged.

ID.—VALIDITY OF PURCHASE BY ADMINISTRATOR.—A purchase of property of the estate sold at public auction by the administrator or by another for him is not void, but voidable only at the instance of those interested in the estate.

ID.—PRICE FULLY PAID—USE OF PURCHASE MONEY BY ESTATE—POSSESSION OF PURCHASER—CONDITION OF RECOVERY.—When it appears that a price largely in excess of the appraised value of the land purchased was paid in cash by the plaintiff as purchaser, whether for himself or for the administrator, and the purchase money was applied wholly for the benefit of the estate, and all equitable rights under the purchase are now vested in the plaintiff, who is in possession of the property, the executor cannot avoid the sale and recover the possession of the property without returning the purchase money paid, or without an accounting in which the purchase price · enters as a factor.

ID.—EQUITABLE RIGHTS OF PARTIES TO BE FULLY DETERMINED.—Upon an accounting had after reversal of the judgment, all the equitable rights of the parties are to be fully determined, and the accounting is to be had upon the basis suggested in the supplemental opinion in *O'Connor* v. *Flynn*, 57 Cal. 293, so far as applicable.

APPEAL from a judgment·of the Superior Court of Nevada County and from an order denying a new trial. F. T. Nilon, Judge.

The facts are stated in the opinion of the court.

Thos. S. Ford, for Appellant.

C. W. Kitts, J. M. Walling and Fred Searls, for Respondent.

LORIGAN, J.—This is an action to quiet title in which judgment went for the defendant W. G. Richards as surviving executor and residuary legatee. The plaintiff appeals therefrom and from an order denying his motion for a new trial.

On the hearing here the respondent moved to dismiss the appeal from the order denying the motion for a new trial on the ground that the notice of intention to move therefor was not served or filed within the time allowed by law or any order of the superior court.

The case was tried in the superior court of Nevada County, the then attorney for the plaintiff being a resident of and having his office in Berkeley, Alameda County. The showing upon which the motion to dismiss is based is that the findings of the court were signed and filed upon April 18, 1906, and the judgment filed and entered on July 23d of that year. On July 25, 1906, the attorneys for defendant mailed to the attorney for plaintiff, at his residence in Berkeley, a copy of the judgment which contained a statement of the filing of the findings and on the same day—July 25, 1906—that the attorneys for defendant mailed a copy of the judgment and notice to the attorney for plaintiff, the plaintiff, who resided in Nevada County, personally applied to the court there for an order staying the issuance of execution for twenty days, which was granted; on August 8th plaintiff again personally applied to the court and was granted an order allowing twenty days additional time within which to serve and file his notice of intention to move for a new trial, and on August 13th a further extension of ten days for the same purpose was granted to plaintiff on his personal application to the court therefor. On August 29, 1906, a local attorney having been engaged by plaintiff (his former attorney residing in Berkeley having withdrawn from the case) notice of intention to move for a new trial was served that day on the attorney for defendant and filed, and further proceedings relative to the new trial were conducted under said notice of intention.

The position of respondent on this motion to dismiss is, that the appellant, by voluntarily appearing and securing in per-

son the order for a stay of execution on July 25, 1906, thereby took notice of the filing of the findings and the decision of the court, and that his time within which to serve and file said notice of intention to move for a new trial commenced to run then and on the theory that he had but ten days to file and serve his notice of intention his time to do so expired on August 4, 1906, several days before he obtained the order of August 8th extending his time to serve and file his notice of intention, and hence the latter order was void, the court having no jurisdiction to make it after the expiration of the statutory time within which the appellant could serve and file such notice.

Upon the record before us there is no merit in this contention. In order to set the time in motion within which the appellant must serve and file his notice of intention to move for a new trial, it was necessary for the respondent to serve upon the attorney for the appellant a written notice of the decision (Code Civ. Proc., secs. 659, 1010; *Mallory* v. *See*, 129 Cal. 356, 359, [61 Pac. 1123]; Code Civ. Proc., sec. 1015). This latter section requires that when a party has an attorney in an action "the service of papers when required must be upon the attorney instead of the party" . . . Conformable to these provisions of law the attorneys for respondent mailed to the attorney for appellant what was in effect and intended to be a notice of decision. The service of this notice was complete when the deposit was made in the post-office (Code Civ. Proc., sec. 1013), and as the distance from Nevada City to Berkeley is conceded to be one hundred and fifty miles, the attorney for appellant was, under the terms of the section last quoted, entitled to sixteen days after the day of deposit, or until the eighth day of August, 1906, to serve and file his notice of intention. It is true, that while the statute requires written notice of decision to be served upon the attorney for the adverse party it may be waived. Such waiver may appear, as declared in *Mallory* v. *See*, 129 Cal. 356, 359, [61 Pac. 1123], from some act or acquiescence of the party in open court or in the proceedings in the case as disclosed by the records, or files of the case, or the minutes of the court; when the conduct of the party in the case, as appears from such records or minutes, is inconsistent with any theory other than that he had formal notice of the de-

cision.    Under such circumstances he is deemed to have
waived written notice.    But this rule has no application to
the matter at bar.    It only applies when a written notice has
not been given; it does not apply when written notice has in
fact been given because there is then nothing to waive.

Now, as far as is disclosed by the record before us the at-
torney for appellant was on July 25, 1906, served with writ-
ten notice of the decision, and on the same day appellant per-
sonally applied for and obtained the order for a stay of ex-
ecution.    This application by appellant, personally, did not
amount to a waiver or "to taking of notice" of the decision, as
it is characterized by respondent, so as to affect the time
within which notice of intention to move for a new trial must
be served and filed.    It did not amount to a waiver of notice,
because there was nothing to waive, as at that time, as far as
the record discloses anything to the contrary, the appellant
had written notice of the decision by the service of it on his
attorney.    Neither did his application for a stay operate as a
"taking of notice" of the decision, because he had that al-
ready, by the service of it on his attorney.    Nor, really,
would it be of any consequence as far as the matter is pre-
sented here, whether the application for a stay was made be-
fore or after the service of the notice of decision.    If before,
and thereafter written notice of the decision was actually
served as the statute requires, such service would operate as a
waiver itself of the waiver which the respondent might other-
wise claim was effected by the application for a stay made
prior thereto.    If after, it certainly could not operate to cur-
tail the time which service of notice gave.    By such service of
written notice of decision the right of appellant to give notice
of intention to move for a new trial, within the time which
the law allowed by reason of the residence of his attorney in
a different place from where the attorneys for respondents
resided, was fixed and his mere application for a stay of ex-
ecution, made either before or after such service, and which
had no relation whatever to the matter of moving for a new
trial, could not affect the time within which he might serve
and file his notice of intention to do so.

We dispose of this objection of the respondent to the con-
sideration of the appeal from the order denying the motion
for a new trial, as being entirely untenable upon the record,

without discussing the proposition whether an application for a stay of execution, would in any case, itself constitute a waiver of written notice of decision, or the further proposition whether such application by the appellant personally would constitute a waiver in face of the statutory requirement that the notice of decision must be served on the attorney for appellant and not upon the appellant himself, or whether, as the statute prescribes that service shall be made upon the attorney, any other person save the attorney could waive the right to have it made as the statute requires. It is unnecessary to consider these propositions, because here written notice of decision was actually given the attorney for appellant, and within the time allowed by law and the additional time given by orders of the court, the notice of intention to move for a new trial was regularly served and filed.

Some other points are made in support of the motion to dismiss, but as there is clearly nothing in them we neither mention nor discuss them.

Now as to the appeal on its merits.

Philip Richards died in the year 1887 in Nevada County leaving a will, in which after providing for the payment of certain enumerated legacies he devised the residue of his estate to his two brothers William S. Richards and Francis Richards, or as the latter is more commonly designated in the record Francis S. Richards. As his executors he appointed his nephew, William G. Richards, son of said William S. Richards, said Francis Richards, and James Bennallack and empowered them, after the expiration of two years from his death, to sell any portion of his real property at public auction "without any order of court whatever or being required to account to any court," and upon a sale thereof provided that all legacies which then remained unpaid should be paid at once in full.

The clauses of his will relative to the payment of legacies, and the disposition of the residue of his estate declared that: "after the payment of all legacies herein enumerated I give and bequeath all the rest, residue and remainder of my estate of whatever kind and character to my brothers William S. Richards and Francis Richards, share and share alike.

"In the event of the death of any one or more of the legatees herein named, before they, or either of them, shall

have received their bequests, the share of such deceased legatee or legatees shall be paid to my brother William S. Richards."

On May 11, 1891, under the power conferred by the will, the executors sold at public auction to plaintiff, as the ostensible purchaser thereof, a lot in Nevada City belonging to the estate, and on the same day made him a deed purporting to convey to him as executors, under the power conferred by the will, the title of the estate to said property. The land was sold for $3,365, an amount considerably in excess of the amount at which it had been appraised shortly before the sale, and the plaintiff was immediately placed in possession of the property by the executors and he and his successors have remained in possession ever since. The full amount of the purchase price was paid to the executors by the plaintiff on the day of the sale and the execution of the deed and the money was shortly thereafter used by said executors for the benefit of the estate of Philip Richards, deceased, in the payment of legacies and the expenses of administration, and accounted for by them and their accounts approved by the court.

The executors deeming that they had sufficient authority under the will to convey title to the property without any confirmation of the sale by the court, made no return thereof nor sought confirmation thereof until many years later and as a result litigation arose between the plaintiff and his successor in interest, and the executors of the estate of Richards, respecting the title to the property, the matter having been here for consideration in the cases of *Bennalack* v. *Richards,* 116 Cal. 406, [48 Pac. 622]; *Bennallack* v. *Richards,* 125 Cal. 428, [58 Pac. 65], and *Granger* v. *Richards,* 126 Cal. 653, [59 Pac. 118].

This present action was brought by plaintiff in 1897 against the executors and the residuary legatees under the will to quiet his title to the property.

In his complaint the plaintiff alleged, generally, ownership of the property by him, and also set up the facts surrounding the sale to him by the executors, payment of the purchase price and delivery of possession of the property to him and alleged facts upon which he based a claim of title to the property by adverse possession; he also alleged proceedings in the

matter of the estate of Richards under which he claimed that a certain order of court made on February 19, 1895, in effect amounted to a confirmation by the court of the sale of May 11, 1891; he set up further an estoppel by deed of the executors, and an estoppel *in pais*, the latter based on the alleged fact that he had made large improvements and repairs on the property and expended money thereon with the knowledge and acquiescence of the executors and without any objections on their part.

The executor James Bennallack made no appearance in the case and while it was pending died.

The executor, Francis S. Richards, answered admitting that plaintiff was the owner of an undivided one half of the property in question by virtue of a conveyance thereof made by said executor, in his individual capacity as residuary legatee under the will to one half of the estate of the said Philip Richards, deceased. He further set up that the conveyance of the executors to plaintiff made on May 11, 1891, was made in good faith and for full value; that the money derived as the purchase price had been used by the executors to pay legacies enumerated in the will; that as a residuary legatee he elected to treat the deed made by the executors to plaintiff as good and valid and declined to rescind said sale or deed or to return to plaintiff any part of the purchase price. This executor Francis S. Richards also died pending the trial of the cause.

The other executor, William G. Richards, who in behalf of the estate has all along contested the claim of plaintiff, filed an answer and cross-complaint and in the former denied all the allegations upon which plaintiff based his claim of ownership. He then averred that at the time the property was offered for sale by the executors it was the property of the estate of Philip Richards, deceased; that James Bennallack, one of the executors, desiring to purchase said property, caused the plaintiff to attend said sale and bid in said property for him, which he did; that no return of the sale of the property by the executors was ever made, nor was said sale ever confirmed by any court; that within ten days after the conveyance by the executors to plaintiff, plaintiff conveyed said property to said James Bennallack, who thereafter conveyed it to his wife, Mary A. Bennallack, who on

May 18, 1895, brought an action in the superior court of Nevada County against these same defendants to quiet her title to said premises, which action is now pending and undetermined, and that about two months prior to the bringing of the present action by plaintiff said Mary A. Bennallack conveyed said property to him. It is then alleged that plaintiff had received large sums of money over and above the expenses of said property, and that plaintiff and his grantees had ever since said sale by the executors, received from the income and proceeds of said property, a net amount far exceeding what was paid as the purchase price thereof. The prayer of the cross-complaint was that it be decreed that plaintiff has no title to the property and that it be adjudged to be the property of the estate of Philip Richards, deceased.

The answer of the plaintiff to the cross-complaint denied any agreement between himself and James Bennallack to purchase the property for the latter; alleged that the said sale was in fact made to plaintiff; that the purchase money was distributed and paid out in said estate by the executors for the benefit of the persons entitled to the estate; that the executors had never paid or offered to pay back to the plaintiff the money which he had paid as the purchase price of said property, and denied that plaintiff or his grantees had received from the income or proceeds of said property a net amount equal to or in excess of what he had paid as the purchase price thereof.

Upon the trial the court found that plaintiff was not the owner of any portion of the lot in question; that W. G. Richards as the surviving executor of the estate of Philip Richards, deceased, was entitled to the possession of the premises; and that said W. G. Richards as the successor in interest of his father, W. S. Richards, residuary legatee of said Philip Richards, deceased, was entitled to any residue thereof remaining after closing said estate.

The court further, specifically found, that plaintiff did not purchase or pay for said property in his own behalf, but in making such purchase and payment was acting as agent of James Bennallack, one of the executors of the estate; and that the purchase price was received and paid over by the executors for the benefit of the estate and accounted for in the ac-

counts approved by the court. There are other findings made by the court which, to avoid repetition, will be referred to in considering the points made relative to them.

The appellant attacks the findings made in so far as they are against his claim of title, and they all practically bear against it in that regard.

He does not insist that he acquired any legal title to the lot under the sale itself made by the executors, and of course he could not because it was decided in *Bennalack* v. *Richards,* 116 Cal. 406, [48 Pac. 622], that while the will of Philip Richards empowered the executors to sell, still it was necessary to have the sale reported and confirmed by the court in order to convey the legal title. His claim is, however, that the evidence established title in him by adverse possession; that aside from this the sale was in effect confirmed by the court by the order of February 19, 1895, and further that his claim of estoppel—both by deed and *in pais*—was supported by the evidence and the court should have so found. The court found against him on all these matters and we think the evidence justified the findings.

The claim of adverse possession was not sustained, because it appeared, that subsequent to the conveyance to plaintiff by the executors and on February 9, 1895, he conveyed the property to Mrs. Bennallack, wife of James Bennallack. She, two days thereafter, and much less than five years after the deed to plaintiff from the executors, commenced an action against these identical defendants as executors and residuary legatees, to quiet her title to this same property, to which they answered denying her title and that action is still pending and undetermined. Mrs. Bennallack and her husband, James Bennallack, reconveyed the property to plaintiff on May 8, 1897, but when plaintiff took such reconveyance the evidence shows, and the court so found, that he did so with full knowledge and notice of the pendency of the action to quiet title brought by Mrs. Bennallack. Under these circumstances, plaintiff could not sustain his claim of adverse possession in himself and his grantor for the requisite period, because while he and she might otherwise have been in possession for the requisite time they were not in the peaceable and undisputed possession, as the title and right of possession were being then actually litigated in court.

Neither is there any merit in the claim that by virtue of certain proceedings in the estate of Richards, eventuating in the order of February 19, 1895, alleged in the complaint, the court should have found that the sale to plaintiff was in that proceeding confirmed, or at least that the judgment of the court therein operated as a bar against any claim of the executors that the sale by them was not valid so as to convey the legal title.

The proceeding referred to was one relating to the settlement of an account in the estate of Philip Richards, wherein W. S. Richards, one of the residuary legatees, sought by petition filed September 5, 1894, to have the executors account for the rents and profits of the property in question. An order of court was made requiring them to do so, which was served personally on two of the executors, James Bennallack and F. S. Richards. The executors appeared and answered the petition and the court after settling their account entered a judgment as follows: "That each of said deeds of real estate as executed and delivered by said executors . . . be and they are hereby adjudged and decreed to have been absolute and valid on the date when so executed and delivered without confirmation of court." It is this quoted judgment which the appellant claims was in effect a confirmation of the sale, or at least operated as a bar against any question as to the validity of the deed. But we do not think it had either effect. The proceeding in which this purported judgment was entered was the settlement of an account, and the court had no jurisdiction to determine a matter which was not involved in the settlement. The law provides a particular method for the return of sales of real estate, and the confirmation thereof, and provides the character of notice which shall be given in order to confer jurisdiction on the court in the proceeding to confirm. The proceeding in question here did not pretend to relate to a confirmation of sale, and was not noticed as provided by law so as to confer jurisdiction on the court to confirm. In fact the court did not assume to confirm the sale but to declare the deeds valid without confirmation, a matter which is not committed to the jurisdiction of the court sitting in probate in the settlement of an account.

As far as the estoppels asserted by plaintiff are concerned —by deed and in pais—they require no particular consideration.

The special point, as to the deed of May 11, 1891, by the executors, is that it purported to convey to plaintiff title in fee simple absolute, without qualification or condition, and that both the Richards as residuary legatees, are estopped to assert any claim to the property against plaintiff and he reasons out an estoppel — particularly against W. G. Richards, as successor to his father, W. S. Richards, one of the residuary legatees, on the following consideration:

Plaintiff had succeeded, by conveyance from Francis S. Richards, one of the executors, to whatever title he had as residuary legatee of an undivided one half of the property and his claim is, as to the other executor, W. G. Richards, who subsequently succeeded to the interest of his father, W. S. Richards, the only other residuary legatee, that such after-acquired title inured to the benefit of plaintiff under the deed from said W. G. Richards as executor which was absolute in form. The answer to this claim, however, is that the deed of the executors as found by the court was not absolute in form, but purported to convey only the title which the estate of Philip Richards had in the property and no more. It is unnecessary to say anything further on this point. As to the alleged estoppel *in pais* by reason of improvements, maintenance, and repair of the premises by plaintiff with the knowledge and acquiescence of the executors and residuary legatees, and without objection on the part of any of them, it is sufficient to say that the court found that there was no evidence presented as to the amount of such expenditures, and no proof made of any of the other elements of estoppel pleaded, and this appears to be true.

This disposes of the points made by plaintiff under his attack on the findings, as far as they are against his asserted title, based upon alleged possession, confirmation of sale, or estoppel. The evidence warranted the court in finding against him on all these matters.

But while this is true, we are satisfied that upon the other findings as made, the judgment of the court that W. G. Richards, as surviving executor of the estate of Philip Richards is entitled to the possession of the property in dispute, and further that said W. G. Richards, as the successor in interest of said W. S. Richards, residuary legatee of Philip

Richards, deceased, is entitled to any residue thereof remaining after closing said estate, were wrong.

Addressing ourselves first to the matter of the judgment as to the right of W. G. Richards as successor to W. S. Richards, one of the residuary legatees. While the question of who would be entitled to take as residuary legatee under the will might well have been left to be determined on distribution in the matter of the estate of Philip Richards, and was not necessarily involved in the case at bar, it stands as a determined matter under the judgment appealed from, and it is necessary to review the accuracy of the conclusion of the court on the subject.

The conclusion of the court as made was evidently based on the construction it placed on the clauses of the will as first hereinabove quoted. The court construed those provisions of the will giving to W. S. Richards, one of the residuary legatees all legacies which had not been paid before the death of any of said legatees to apply to the share of the estate given to Francis S. Richards, his co-residuary legatee, and that by the death of said Francis S. Richards prior to distribution his residuary interest vested in said W. S. Richards and passed to W. G. Richards, his successor in interest, to the residuary estate. But we think the construction so given was incorrect. The testator had provided in his will for the payment of certain enumerated legacies and it was as to such legacies that he provided, in the event of the death of any legatees, that such legacies should go to W. S. Richards. He did not speak of the brothers as "legatees" of the residue of his estate. In effect, though not so designated, they were under the provisions of the will to be residuary legatees, or residuary devisees, depending upon the character of the residuum of the estate when distribution of it was to be made —whether personal or real property. But the testator did not designate them as either legatees or devisees but bequeathed "after payment of all legacies herein enumerated" the residue of the estate to them by name. He did, however, speak about legacies "herein enumerated," and "legatees herein named" and provided in the "event of the death of the legatees" that the share of such "legatees" should be "paid to his brother W. S. Richards." This mention of "legacies enumerated" and "legatees herein named" had reference to

legacies as such, payment of which he had specially provided for, and which payments would be made during the administration of the estate, and had no reference to the residue of the estate which could only be received by the residuary legatees or devisees on distribution. The purpose of the testator was doubtless to provide that, in the event of the death of a legatee entitled to any of the legacies enumerated, his legacy instead of going to the heirs of the legatee should go to the brother of the testator, W. S. Richards. This intention is evidenced also by the use of the word "payment" and "paid," in this connection; words which are quite apt when used concerning legacies which are generally of money, but would be quite inapt when applied to the disposition of the residue of an estate which might consist of both real and personal property of which the legatee or devisee could only obtain possession by "distribution." Had the testator intended the provisions of his will relative to the death of legatees, to apply to the residuary legatees he would have used more characteristic words than "payment" or "paid," which apply strictly to monetary transactions as provisions for legacies and their payment generally are.

While we are satisfied that this is the proper conclusion, still if the matter were open to construction by reason of the language used in the provisions of the will, under familiar rules this would be the construction that must be given to it. By the first quoted provision of the will both brothers are undoubtedly made residuary legatees or devisees of the residue of the estate without limitation or qualification, and by the subsequent section it is at least rendered doubtful whether it applies to all legacies special or residuary, or only to the specially enumerated legacies. Under this condition it is a well established rule of construction of wills that when the words of a will, in the first instance, indicate an intent to make a clear gift, such gift is not to be cut down by any subsequent provisions which are of indefinite or doubtful expression. (30 Am. & Eng. Ency. of Law, 2d ed., p. 687.)

It follows therefore that, as F. S. Richards was a legatee or devisee of one half of the residue of said estate of Philip Richards, and his bequest unaffected by the provisions as to deceased legatees the plaintiff, as his successor in interest

would, instead of W. S. Richards, be entitled to one half of the property upon distribution of the estate.

Now, upon the proposition that the judgment declaring the surviving executor entitled to the possession of the property in question. This is based on one of two views taken by the court, either that from the finding that the purchase was made by Bennallack for himself as administrator, through the interposition of plaintiff, the contract of sale was absolutely void, or that as the sale was subject to confirmation and confirmation had been refused, the legal title never passed from the estate and the executor was entitled to a judgment for possession of the property.

The plaintiff attacks both the findings made as to these facts. He insists that the evidence is entirely insufficient, and in fact does not warrant the finding that Bennallack was the real purchaser at the sale or that plaintiff purchased the property for the benefit of any one other than himself, and further insists that there was no evidence to support the finding that in the proceedings in the estate of Philip Richards the court had on June 19, 1900, refused confirmation of the sale. But appellant is in no position to attack this latter finding because it is not embraced in his specifications of insufficiency as to the findings. His specification, which at all bears on the matter is that there is no evidence that the sale had not been confirmed by the court. This could only apply to the finding that the order of February 19, 1895, made on the settlement of the account of that date, was not a confirmation, and not to the other finding that confirmation had been refused on June 19, 1900. A finding that there was no confirmation and a finding that confirmation was refused, are entirely different and the specification of appellant did not reach the latter. Hence the finding that confirmation was refused must stand as unchallenged.

As to the finding that James Bennallack, one of the executors, was in fact the purchaser at the sale of May 11, 1891, it is unnecessary to determine whether the evidence sustains it or not, because assuming it to be sustained (which is only an assumption for present purposes) still we are satisfied that the judgment based upon either, or both of these findings, (and there are no others which could support it) cannot be sustained. If plaintiff was not the purchaser, he at least suc-

ceeded to whatever rights James Bennallack had by the conveyance from himself and wife to plaintiff on May 8, 1897. If Bennallack was in fact the purchaser at the sale of this property in question, the purchase by him was not void but voidable only at the instance of those interested in the estate. (*Boyd* v. *Blankman,* 29 Cal. 20, [87 Am. Dec. 146] ; *O'Connor* v. *Flynn,* 57 Cal. 293; *Burris* v. *Kennedy,* 108 Cal. 341, [41 Pac. 458].)

Without making any return of sale at all, the executors might, at any time during the many years which elapsed before confirmation of the sale was refused by the court, have brought an action to rescind such sale for fraud on the part of Bennallack. Or upon a return of sale, those interested in the estate if they had knowledge of the facts could elect to have it confirmed or rejected as they might deem it most advisable for the interests of the estate. Had confirmation been rejected, it would have been the plain duty of the executors to have returned the purchase price which had been paid. Had the sale been confirmed without knowledge on the part of those interested in the estate that Bennallack was himself the purchaser they might have maintained an action to rescind the sale, or to have it declared that Bennallack held the title in trust for the benefit of those interested in the estate. But, whether an action were brought to rescind the sale, or to have a trust declared after confirmation, the estate would not be entitled to recover possession of the property in which they had placed the purchaser after receiving from him the full purchase price thereof, without returning or offering to return to him the purchase money after an accounting between them in which the purchase price would enter as a factor. (*O'Connor* v. *Flynn,* 57 Cal. 293; *Burris* v. *Kennedy,* 108 Cal. 341, [41 Pac. 458].)

This is in harmony with plain principles of equity, as it would be unjust to allow one to retain the proceeds of a sale which, as in this case, were devoted to the use and benefit of the estate as the will provided upon a sale of the property they should be, and likewise obtain possession of the property itself. This rule finds its application in the cases cited where confirmation had been made, the proceeds of the sale applied for the benefit of the estate, and actions subsequently brought to recover the property on the ground of fraud upon the part

of the administrator in purchasing through the interposition
of a third party the property of the estate for himself.  But
the principle can be no different where an action is brought
to recover possession of property after refusal of the court
to confirm its sale.  In fact, that was the theory upon which
the issues in the case at bar were framed.  The cross-com-
plaint of the surviving executor in which he sought a decree
establishing the title of the estate to the property and for its
possession, alleged that plaintiff and his grantees had received
from the income and proceeds of said property a net amount
far exceeding what they paid therefor, which by answer the
plaintiff specifically denied.  In so pleading the surviving ex-
ecutor recognized the equitable rule that he was not entitled
to recover possession of the property unless upon a restoration
of the purchase price or an accounting which would involve it,
but avoided the necessity of any tender of such purchase
price by alleging the reception by plaintiff and his grantees
of more than sufficient money from the income of the property
to reimburse him.  The court, however, made no finding upon
this issue, but assumed that from the findings that the sale
was in fact for the benefit of Bennallack, and confirmation re-
fused, the plaintiff was not entitled to reimbursement of the
purchase price which had been received by the estate or to
any accounting relating to it.  This case, even assuming that
Bennallack was the purchaser and the sale was refused con-
firmation, practically calls for the application of the same
rule as applies where a sale is, in fact, confirmed and an ac-
tion subsequently brought to recover the property on account
of fraudulent conduct on the part of the administrator in
having the property sold to himself.  In such cases, as we have
seen, the rule is that reimbursement should be had of the
purchase price before the property can be recovered by those
setting up the fraud of the administrator to defeat his title.
There is no good reason why the same rule should not be
applied here, and all equitable considerations are in favor
of its application.  Here the property was sold under a belief
on the part of the executors that their power of sale rendered
confirmation unnecessary; full value was paid for the prop-
erty and the purchaser given possession; no return of sale was
made until, according to the findings, nearly nine years had
elapsed and during that period the purchaser had made large

improvements upon the property at the same time that he had received the income thereof. The money which he had paid had been used for the benefit of the estate in paying the legacies which the will declared should be paid out of the proceeds from the sale of the real property of the estate and some of it likewise used in paying the expenses of administration. It does not appear directly what the present condition of the estate is, but it may reasonably be inferred from the pleadings and evidence that a considerable amount due on the legacies remains unpaid as well as the expenses of administration. Be that as it may, however, the estate had the benefit of the money paid, and it would be inequitable to permit it to recover the property in question from the plaintiff without restoring to him the consideration he paid for it, or at least determining upon an accounting the equitable rights of the parties. The mere fact that confirmation of the sale was rejected should under the circumstances make no difference in the application of the general equitable rule which obtains when confirmation is actually made and the sale subsequently declared void for fraud on the part of the administrator in procuring it to be made for his own benefit. There restitution of the purchase price must be made, or if necessary an accounting between the parties had and it should be made or had here.

Applying this rule there should be little difficulty in settling this controversy. As the sale was refused confirmation, it is not of much importance whether the property was purchased by Bennallack or plaintiff. Neither had any title to it as against the estate of Philip Richards, at least none is disclosed by the record here. The interest of plaintiff as successor to F. S. Richards, one of the residuary legatees, is properly a matter for consideration by the court in the probate proceedings in the estate of Philip Richards, on distribution. All that is necessary on the going down of this case is to try the cause on the theory adopted by the parties in their pleadings,—namely, that plaintiff is entitled to have restored to him the purchase price which he paid the estate for the property. Of course, considering the long time that has elapsed since the attempted sale to plaintiff and the fact that he has been in the possession of the property and in the receipt of the rents, issues, and profits during that time, it will

be necessary that an accounting between the parties be had, in which necessarily the amount received by the estate as the purchase price of the property will be an element. This the court will have to do in order to adjust the rights of the parties and it can be done upon the basis as suggested in a supplemental opinion in *O'Connor* v. *Flynn,* 57 Cal. 293, as the basis for the accounting in that action, as far as it may apply to this one.

Several other points are made by appellant, both as to findings and alleged errors in the reception and rejection of testimony.

The point that the finding of the court that the property in May, 1891, was producing a large income, and has ever since produced a large income which has exceeded the amount expended for improvements, repairs, maintenance, and taxes, is not sustained by the evidence. In fact there was no evidence as to income during the period referred to.

As far as the claim of error in the rulings as to the admission of evidence is concerned, we do not find anything of a prejudicial nature.

The judgment and order appealed from are reversed.

Sloss, J., Angellotti, J., and Henshaw, J., concurred.