696 P.2d 1354

Dixon D. COWLEY and Alice N. Cowley, his wife, Defendants-Appellants,

v.

Gary KAECHELLE and Jane Doe Kaechelle, his wife; Devterra Corporation, a Canadian corporation; Lawrence T. Bergreen and Jane Doe Bergreen, his wife; Kathleen Masters Cordova and Bradford C. Cordova, her husband; and Arizona Title Insurance and Trust Company, as Trustee under Trust No. 6488, Defendants-Appellees.

No. 1 CA–CIV 6719.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 25, 1984.

Reconsideration Denied Nov. 8, 1984.

Review Denied March 13, 1985.

Beus, Gilbert, Wake & Morrill by Neil Vincent Wake, Richard M. Davis, Phoenix, for defendants-appellants.

Bosco & DiMatteo, P.C. by Michael A. Bosco, Philip S. DiMatteo, Carm R. Moehle, Phoenix, for defendants-appellees Kaechelle, Devterra Corporation, Bergreen and Cordova.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Wilbert G. Anderson, Larry L. Smith, Phoenix, for defendant-appellee Arizona Title Insurance and Trust Co.

## OPINION

OGG, Judge.

The assignees of a purchaser of a decedent's real property on an upset bid at a judicial confirmation hearing bring this appeal from a decree quieting title to the same property in the assignees of a prior purchaser from the personal representative. The question this court must decide is whether the trial court erred in upholding the prior purchase from the personal representative under A.R.S. § 14–3714. We affirm the judgment of the superior court.

The undisputed material facts are as follows. On December 14, 1973, Joy Stringham petitioned for appointment as special administratrix and for issuance of letters of administration in the estate of Norman M. DeHoff, her father.[1] On that same date, the court appointed Stringham special administratrix and set a hearing on her petition for letters of administration for January 3, 1974. At the hearing, the court granted the petition and ordered that letters of administration be issued as soon as Stringham had posted bond and taken the oath required by law. The letters of administration were issued on January 3, 1974 pursuant to the court's order.

On February 15, 1977, Stringham entered into a contract, as personal representative, to sell certain real property of the estate ("the Minnezona property") to T.A. Thomas for $25,000. While the escrow was pending, Thomas transferred his interest in the contract to appellee Arizona Title Insurance and Trust Company as trustee of Trust No. 6488. Stringham's deed to Arizona Title was recorded on April 4, 1977.

Later, on about December 12, 1977, Arizona Title conveyed the property back to Thomas. Several days later, Thomas conveyed it to appellee Kathleen Masters, also known as Kathleen Masters Cordova. Thereafter, on December 18, 1978, Masters conveyed undivided one-half interests to appellees Bergreen and Kaechelle. Bergreen subsequently transferred his undivided one-half interest to appellee Devterra Corporation.

In July of 1978, the court ordered Stringham to make an accounting in the probate proceeding, Cause No. P–98353. While obtaining information for the purpose of preparing the court-ordered accounting, Stringham's counsel learned for the first time from her that she had sold the Minnezona property in April of 1977.

On December 15, 1978, Stringham's counsel filed a petition for approval of final account and for decree of settlement and distribution of the DeHoff estate. At the time of the hearing on the petition, the superior court commissioner told Stringham's counsel that it would be necessary for a hearing to be held to confirm the sale of real property before the estate could be closed.

Accordingly, Stringham's counsel petitioned on January 3, 1979 for confirmation of the 1977 sale to Thomas. A hearing was set for February 21, 1979. On February 7, 1979, Stringham's counsel wrote a letter to Thomas, stating that the sale of the Minnezona property to him had been noticed for

---

1. The petition was filed in Maricopa County Superior Court Cause No. P–98353. That proceeding was commenced prior to the quiet title suit that is the subject of this appeal, and is not before the court.

hearing and confirmation by the court on February 21, 1979. The letter further stated:

> Inasmuch as there may be other bidders present who may want to purchase the property, I felt you should be notified and perhaps be present.

The record, however, contains no evidence that Thomas received this letter.

By minute entry of January 24, 1979, the superior court denied the petition for confirmation because of "improper notice", and directed that Stringham's counsel reset and renotice a hearing for confirmation of the sale. In connection with Stringham's motion for summary judgment in the instant case, Stringham's counsel averred that Thomas was not present at the original or the rescheduled hearing for the confirmation of sale. At the subsequent hearing conducted on March 12, 1979, the superior court by minute entry confirmed the sale of an interest in real property to the Swiss-German Foundation or their nominee for the sum of $25,100.

In accordance with this minute entry, an escrow was established to effectuate the sale to the Swiss-German Foundation. Swiss-German Foundation's interest in the escrow was later assigned to Phoenix Open Air Show Grounds, Inc., which simultaneously assigned its interest to appellants Dixon and Alice Cowley. Under an amendment to the escrow instructions, the purchase price was paid into escrow with the understanding that it would be held pending Stringham's efforts to remove the cloud on the title created by the prior conveyance to Thomas. Deeds from Stringham to Phoenix Open Air Show Grounds, Inc., and from Phoenix Open Air Show Grounds, Inc. to the Cowleys were recorded in September, 1979. A quitclaim deed from the Cowleys to Stringham was also placed in escrow for delivery and recording in the event that the cloud on the title could not be removed. Stringham brought the instant quiet title suit on March 21, 1980, in accordance with the escrow instructions.

On February 11, 1982, cross-motions for summary judgment were considered and the trial court determined that no genuine issues of material fact existed and that the case must be decided as a matter of law. The court found, in pertinent part, that:

> ... the letters of administration actually issued in January of 1974 appointed the personal representative of the decedent and such letters contain no restrictions with regard to the handling of the estate. The court therefore determines that anyone dealing with the personal representative and acting in good faith had a right to rely on the letters of administration as they were issued after the new code was effective and in so relying would have relied on the fact that the personal representative would have had a right to dispose of and sell the land without confirmation by the court.... [T]he purchasers at the confirmation hearing either at the time of said hearing or immediately thereafter were certainly aware of the prior sale of said property and the completion of said sale and were or should have been aware that said sale was completed based on the certificate of appointment of personal representative and letters which were without restriction. Pursuant to A.R.S. § 14–3714 the original purchasers and their transferees should and must be protected as the owners of the described real property.

The Cowleys have appealed from the summary judgment entered on April 16, 1982 and the order denying the motion for new trial entered on July 23, 1982. Stringham filed no notice of appeal and is therefore not before this Court.

■ Session Laws 1973, ch. 75, § 29 provides in pertinent part as follows:

> The provisions of this Act shall become effective January 1, 1974.
>
> Except as provided elsewhere in this Act, on the effective date of this Act:
>
> \*    \*    \*    \*    \*    \*
>
> 2.    ... [A]ny proceedings relating to estates of decedents then pending shall become proceedings in supervised administration, unless the decedent's will expressly provided otherwise....

Further, A.R.S. § 14–3504 provides as follows:

> Unless restricted by the court, a supervised personal representative has, without interim orders approving exercise of a power, all powers of personal representatives under this title, *but all sales of real property shall be subject to court confirmation as provided in §§ 14–3506 and 14–3507*, and the personal representative shall not exercise his power to make any distribution of the estate without prior order of the court. Any other restriction on the power of a personal representative which may be ordered by the court must be endorsed on his letters of appointment and, unless so endorsed, is ineffective as to persons dealing in good faith with the personal representative. (emphasis added)

Because administration of the DeHoff estate commenced before the effective date of Arizona's version of the Uniform Probate Code (A.R.S. §§ 14–1102 *et seq.*), Laws 1973, ch. 75, § 29(2) required that the administration be conducted as a supervised administration. Under supervised administration, A.R.S. § 14–3504, all sales of real property by the personal representative were therefore subject to court confirmation under A.R.S. §§ 14–3506 and 14–3507.

The protection provided by A.R.S. § 14–3714 was nevertheless available to purchasers at any such sales. A.R.S. § 14–3714 provides in pertinent part:

> A person who in good faith either assists or deals with another person acting as a personal representative, on the basis of a copy of letters certified by or under the direction of the court or an officer thereof within sixty days of the transaction, *is protected as if the personal representative properly exercised his power and even though the authority of that person as personal representative has been terminated. The fact that a person knowingly deals with one who purports to act as a personal representative does not alone require the person to inquire into the existence of a power, the propriety of its exercise, or the current authority of the purported personal representative.* Except for restrictions on powers of supervised personal representatives which are endorsed on letters as provided in § 14–3504, no provision in any will or order of court purporting to limit the power of a personal representative is effective except as to persons with actual knowledge thereof. (emphasis added)

■ We find that A.R.S. § 14–3714 protected Thomas in his purchase of the Minnezona property and consequently validates his successors' claim to title. We do not find anything in this record that would have required Thomas to investigate the existence of any restrictions on Stringham's authority to sell the real property of the estate. Thomas knew he was dealing with the personal representative of an estate. A.R.S. § 14–3714 nevertheless does not impose a duty on him to take steps to confirm the existence or extent of Stringham's power to sell real property of the estate. Stringham's failure to seek confirmation of the sale within a reasonable time could only have added to the sale's appearance of finality. Given the broad protection expressed in A.R.S. § 14–3714, this court cannot conceive that the legislature intended to require a person in Thomas' position to undertake extensive legal research and analysis of the Session Laws prior to making a straightforward purchase similar to the one involved here.

For us to hold under the circumstances of this case that Thomas' purchase of real property from the DeHoff estate must be invalidated after almost two years would be to violate our statutory duty to apply Title 14 liberally "to promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors." A.R.S. § 14–1102(B)(3). The California Supreme Court stated, on analogous facts in *Bennallack v. Richards*, 125 Cal. 427, 58 P. 65 (1899):

> It certainly cannot be true that executors acting under such a power [to sell real property subject to confirmation by the court] may make a valid and unimpeach-

able contract of sale to appellant, refuse to report it to the court for confirmation, in violation of a duty imposed upon them by law, and having put him in possession, and permitted him to make improvements to an amount nearly or quite equal to the value of the property at the time the contract of sale was made, invoke the powers of a court of equity....

*Id.* at 433, 58 P. at 67–68. *See also, In re: Lee's Estate,* 159 Cal.App.2d 109, 323 P.2d 448 (1958); *Bancroft's Probate Practice* 2d ed., § 662.

The Cowleys nonetheless argue that A.R.S. § 14–3714 did not protect Thomas because the restriction on Stringham's power to sell real property of the estate was imposed not by will or court order but rather by statute. Their reasoning is based on the third sentence of A.R.S. § 14–3714, which provides:

> Except for restrictions on powers of supervised personal representatives which are endorsed on letters as provided in § 14–3504, no provision in any will or order of court purporting to limit the power of a personal representative is effective except as to persons with actual knowledge.

They argue that because the court approval requirement of A.R.S. § 14–3504 was neither imposed by will nor by court order, under the quoted provision it must therefore be effective against persons dealing with the personal representative, regardless of whether they have actual knowledge of it. We cannot agree.

■ Cowleys' analysis takes the quoted provision of A.R.S. § 14–3714 out of context and thus attempts to delimit the scope of protection provided by A.R.S. § 14–3714. If this quoted provision stood alone, the Cowleys' argument might follow by weak negative implication. When the quoted provision is, however, read in conjunction with the broad terms of the first two sentences of A.R.S. § 14–3714, it becomes clear that this provision is not intended to deal with every type of restriction on the powers of personal representatives. Only those restrictions imposed by

will or court order are covered. The quoted provision accordingly has no direct relationship to the issues raised in this appeal.

■ The Cowleys further contend that the protection of A.R.S. § 14–3714 is unavailable to Thomas and his successors in title because no evidence was offered that Thomas entered into the agreement with Stringham after having inspected "a copy of letters certified by or under the direction of the court or an officer thereof within sixty days of the transaction...." A.R.S. § 14–3714. Again we disagree. This court must interpret this statute in accordance with our duty to promote speed and efficiency in estate liquidations. A.R.S. § 14–1102(B)(3). We therefore hold that noncompliance with the condition operates to deny protection under A.R.S. § 14–3714 only in those cases where the inspection of the letters of administration would actually warn the third party of a relevant restriction on the putative personal representative's powers. The limitation on Stringham's powers in the present situation was statutory and thus this limitation was not one that Thomas could have protected himself against merely by inspecting the letters of administration. We therefore conclude that absence of evidence that Thomas inspected a copy of letters of administration certified within sixty days of his purchase of the Minnezona property does not defeat his or his successors' entitlement to protection under A.R.S. § 14–3714.

■ The Cowleys additionally argue that Thomas and his successors in title cannot claim the protection of A.R.S. § 14–3714 because Stringham's letters of administration stated she was appointed "to perform the duties of the office designated in the caption hereof, which duties are prescribed by the laws of the State of Arizona." The Cowleys reason that this language would have placed the reader on notice that Stringham's power to sell the real property of the estate was limited by the requirement that all such sales be approved by the court. A.R.S. § 14–3504. Upon close analysis, however, this reasoning supports the opposite conclusion. Because the letters of

administration did not specify that the De-Hoff estate was in supervised administration, the reference to duties "prescribed by the law of the State of Arizona" would reasonably have led the reader to A.R.S. § 14–3715, which lists the general powers of personal representatives under Title 14. Under that section, a personal representative may, among other things, act to:

6. Acquire or dispose of an asset, including land in this or another state, for cash or on credit and at public or private sale and manage, develop, improve, exchange, partition, change the character of or abandon an estate asset.

\* \* \* \* \* \*

23. Sell, mortgage or lease any real or personal property of the estate or any interest therein for cash, credit or for part cash and part credit, and with or without security for unpaid balances.

■ The Cowleys moreover contend that the trial court erred in applying A.R.S. § 14–3714 in this case because doing so wrongly superseded Laws 1973, ch. 75 § 29(2) and in effect took the estate out of supervised administration. We disagree. Applying a statutory provision which under certain circumstances may insulate innocent parties from the resultant harm associated with the restrictions normally attendant on supervised administration does not legally operate to remove the estate from supervised administration for all purposes. A more sensible view is that A.R.S. § 14–3714 may apply according to its terms in any supervised administration, whether initiated pursuant to § 29 or otherwise. *See* A.R.S. § 14–3502. As we have already held, A.R.S. § 14–3714 was properly applied ·under the circumstances of this case.

■ *Larson v. Whitmer*, 124 Mont. 399, 224 P.2d 983 (1950), on which the Cowleys rely, is inapposite. Unlike the statute construed in *Larson*, A.R.S. § 14–3504 does not preclude the passage of title to a purchaser from a supervised estate absent court confirmation; it merely renders the sale "subject to" court confirmation under the specific procedures provided in A.R.S. §§ 14–3506 and 14–3507. That Stringham failed to invoke those procedures within twenty days after the sale as required by A.R.S. § 14–3506 is undisputed. Indeed, Stringham did not invoke those procedures until almost two years after completion of the sale and recordation of her deed to Thomas.

■ The Cowleys also cite *Marmis v. Solot Co.*, 117 Ariz. 499, 573 P.2d 899 (App. 1977), for the proposition that Thomas' "attempted" purchase of the Minnezona property was rejected as a matter of law when the court accepted a higher bid. The *Marmis* decision is not on point. There the prospective purchaser of property from an estate made an offer to the personal representative through its listing broker. Unlike the situation in the instant case, the prospective purchaser in *Marmis* was specifically informed in the listing agreement that any sale would be subject to court approval. Further, the personal representative accepted the offer on the express condition that if court approval were necessary, the personal representative would have five days after such approval to make a final acceptance of the offer. The court in *Marmis* noted:

[S]ince the real estate was being sold subject to court confirmation, A.R.S. §§ 14–3504 and 14–3506(A), [the prospective purchaser] knew any confirmation hearing could well develop into a bidding on the property by others.

*Id.* at 502, 573 P.2d at 902. Moreover, *Marmis* did not involve a completed sale, and there was no indication that initiation of the confirmation hearing in that case had been delayed beyond the statutory time limit.

■ Apart from A.R.S. § 14–3714, we agree with appellee Arizona Title that summary judgment against Stringham was appropriate on the independent ground that she failed to tender to Thomas and his successors in title the amount she had received from Thomas as the purchase price

of the Minnezona property. *See Jennings v. Lee,* 105 Ariz. 167, 461 P.2d 161 (1969); 12A C.J.S. *Cancellation of Instruments* § 82 at 785–86 (1980). The court in *Hammert v. McKnight,* 132 Okl. 14, 269 P. 289 (1928), stated that:

The purchaser is entitled to receive the title owned by the estate of the decedent at the time of his death or prior to the sale. *The estate will never be allowed to retain its title to the property and also retain the purchase price therefor.* The law requires the estate to part with whatever title it has in and to the land before it will be permitted to retain the purchase price therefor. (emphasis added)

*Id.* at 16, 269 P. at 290–291.

The judgment of the trial court is therefore affirmed.

JACOBSON, C.J., and EUBANK, P.J., concur.