138 N.J. Super. 456 (1976)
351 A.2d 385
KENNETH A. MELVENEY AND NATALIE MELVENEY, PLAINTIFFS-RESPONDENTS,
v.
JOHN McCRANE AND BEATRICE McCRANE, DEFENDANTS,
BERTHA M. O'DONNELL, DEFENDANT-APPELLANT,
FRANKLIN D. SOGORKA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1975.
Decided January 21, 1976.
*457 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. Neil I. Kilstein argued the cause for the defendant-appellant Bertha M. O'Donnell (Messrs. Kreiger, Karas & Kilstein, attorneys).
Mr. Daniel Crystal argued the cause for the plaintiffs-respondents, Kenneth A. Melveney and Natalie Melveney (Messrs. Cohn & Lifland, attorneys).
*458 Mr. Lester E. Fetell argued the cause for the defendant-respondent Franklin D. Sogorka.
The opinion of the court was delivered by MILMED, J.A.D.
Defendant Bertha M. O'Donnell appeals from a judgment entered on two jury verdicts rendered against her  one for $2,500 in favor of plaintiffs Kenneth A. Melveney and Natalie Melveney, and the other for $8,000 in favor of defendant Franklin D. Sogorka. The factual situation as disclosed by the proofs may be briefly summarized.
Defendants John and Beatrice McCrane owned a one-family house at 610 Park Avenue in Paterson. On July 13, 1970 they gave O'Donnell, a real estate broker, a six months' exclusive agency for the sale of the property at $49,900, the stipulated commission being 6% of the total sales price. The property remained on the market for over a year and by July 26, 1971 the asking price had been reduced to $40,000. The agency continued in effect and on November 19, 1971 Sogorka saw a "For Sale" sign at the premises, telephoned O'Donnell and was shown the property on November 21. On November 23, he called O'Donnell, offered $37,000 for the house and sent her "a binder check for $100." O'Donnell transmitted the offer to the McCranes[1] whom she had known all her life and who were then at their summer home in Sea Girt. The McCranes approved the offer. A proposed "purchase contract" was sent to Sogorka on November 26. On or about November 28 the Melveneys saw a "For Sale" sign at the premises, became interested in the property, offered to buy it for $40,000 on November 29, and the next day gave O'Donnell a deposit of $500. O'Donnell then informed the McCranes of the Melveneys' offer and was told to contact Sogorka "and give him a chance to increase * * * or withdraw" his offer. O'Donnell contacted *459 Sogorka who, although "very resentful," increased his offer to $41,000. O'Donnell notified the McCranes of the new offer and was told to inform the Melveneys of it. After she did this O'Donnell received a telephone call from Mrs. Melveney's father, Joseph L. Ferraro, a lawyer, who asked for, and was given, the McCrane telephone number in Sea Girt. He called, was told by Mrs. McCrane that she wanted $43,000 for the house, and offered that amount to her. He wanted to buy the house for the Melveneys. He then called O'Donnell and told her of his conversation with Mrs. McCrane. He also called the attorney for the McCranes regarding the proposed purchase. Mrs. McCrane then informed O'Donnell directly of the $43,000 offer and instructed her to talk to Sogorka "and give him a further chance to increase his offer if he wants to. If he doesn't want to, that's all right." O'Donnell informed Sogorka of the situation. The next morning, December 1, 1971, Sogorka, having obtained the McCrane Sea Girt number from O'Donnell, called and spoke with Mrs. McCrane. She acknowledged that the $43,000 offer had been made and that he "should deal solely with Miss O'Donnell." He testified that he "called Miss O'Donnell back and told her that in view of the offer of $43,000," he "would then offer $45,000." On December 2 O'Donnell returned to the Melveneys their $500 deposit. A contract for the purchase of the property by Sogorka for $45,000 was prepared and signed.
The Melveneys then started suit against the McCranes and O'Donnell in the Chancery Division. They sought, among other things, specific performance of their alleged agreement to purchase the property and damages for the alleged breach of, and tortious interference with, that agreement. Sogorka's motion to be joined as a party to the action was granted. His answer to the amended complaint which the Melveneys filed included a counterclaim for damages against the Melveneys and a crossclaim for indemnification against the McCranes and O'Donnell. Motions for summary *460 judgment dismissing the complaint were made by Sogorka, the McCranes and O'Donnell. The motions by Sogorka and the McCranes were granted. O'Donnell's motion was denied. The Melveneys' complaint against Sogorka[2] was dismissed and the lis pendens which they had filed against the property was vacated. Their complaint against the McCranes was also dismissed. The remaining issues, i.e., those between (1) the Melveneys and O'Donnell, (2) Sogorka and O'Donnell, and (3) Sogorka and the Melveneys on Sogorka's counterclaim were transferred to the Law Division. Sogorka's crossclaim against the McCranes was dismissed by stipulation.
At trial O'Donnell moved for an involuntary dismissal at the close of plaintiffs' case. The motion was denied. The trial judge submitted to the jury: (1) the claims of the Melveneys against O'Donnell for (a) tortious "interference with a prospective economic advantage" and (b) tortious "interference with an existing contractual relationship"; (2) the claim of Sogorka against O'Donnell for tortious "interference with an existing contractual relationship,"[3] and (3) the claim of Sogorka against the Melveneys for "malicious prosecution" (in starting the action and filing a lis pendens against the property). The jury found (1) in favor of the Melveneys and against O'Donnell for $2,500, (2) in favor of Sogorka and against O'Donnell for $8,000, and (3) in favor of the Melveneys and against Sogorka "no cause for action" (on the counterclaim).
On this appeal Miss O'Donnell contends that (1) "Sogorka did not assert an affirmative claim against" her; (2) *461 "an agent cannot be held liable to third parties for tortious interference with his principals existing or prospective contracts"; (3) the "respondents failed to sustain their burden of proof"; (4) she "was deprived of a fair trial as a result of numerous trial errors," i.e., (a) "evidence of the amount of" her "brokerage commission should not have been excluded"; (b) "the court erroneously stated to the jury that the $43,000 Ferraro offer was not made on behalf of plaintiffs [the Melveneys]"; (c) "the continued reversal of the trial order prejudiced" her "rights"; (d) "the accumulation of trial errors was significant and prejudicial," and (e) "the vaudeville atmosphere in which the trial was conducted mandates reversal"; (5) "the charge to the jury was improper, incomplete and prejudicial," and (6) "the sanctions[4] imposed upon counsel were unduly harsh."
From our review of the record we are entirely satisfied that Miss O'Donnell was not, as a matter of law, liable in damages to either the Melveneys or Sogorka. Their claims against her should not have been submitted to the jury. The evidence of her activities in regard to the property is abundantly clear and in all essentials undisputed. It bespeaks only an agency relationship between her and her principals, the McCranes, throughout which she kept them fully informed and, following their instructions, secured for them a purchaser for their property at the highest price obtainable through vigorous competitive bidding.
"Because of the specialized service the real estate broker offers in acting as an agent for his client there arises a fiduciary relationship between them; * * *." Reese v. Harper, 8 Utah 2d 119, 329 P.2d 410, 412 (Sup. Ct. 1958). And see, Silverman v. Bresnahan, 35 N.J. Super. 390, 395 *462 (App. Div. 1955). As a fiduciary the broker "is required to exercise fidelity, good faith and primary devotion to the interests of his principal." Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 553 (1967).
Unless otherwise agreed, an agent employed to buy or to sell is subject to a duty to the principal, within the limits set by the principal's directions, to be loyal to the principal's interests and to use reasonable care to obtain terms which best satisfy the manifested purposes of the principal. [2 Restatement, Agency 2d, § 424 at 287 (1958)]
See also, Annotation, "Liability of real-estate broker to principal for negligence in carrying out agency," 94 A.L.R.2d 468, § 6 at 474-476.
In the circumstances it was Miss O'Donnell's "duty to obtain the terms most advantageous to the principal," the McCranes. 2 Restatement, Agency 2d, § 424, comment (b) at 287 (1958). She was required to transmit to the McCranes each of the more favorable offers as they were submitted to her. See Annotation, "Liability of real-estate broker or agent to principal for concealing or failing to disclose offer," 7 A.L.R.3d 693, § 3 at 696-699. All of her negotiations with the Melveneys and all of her negotiations with Sogorka were directed toward fulfillment of these duties. She cannot be penalized for doing what she was obligated to do.
The charges of "malicious interference" made by the Melveneys and Sogorka against O'Donnell find no support in the proofs. Here the broker's prime purpose was to foster lawful competition.
The gravamen of a cause of action for malicious interference is conditioned upon the wanton, malicious and unjustifiable acts of others. Where, however, a loss occurs by reason of lawful competition, however sharp, the loss is one for which the law affords no redress. Louis Kamm, Inc. v. Flink, 113 N.J.L. 582 (E. & A. 1934); Louis Schlesinger Co. v. Rice, 4 N.J. 169 (1950); George F. Hewson Co. v. Hopper, 130 N.J.L. 525 (E. & A. 1943). [Kurtz v. Oremland, 24 N.J. Super. 235, 240 (Ch. Div. 1952), opinion by Judge (later Justice) Haneman] *463 See also, Kurtz v. Oremland, 33 N.J. Super. 443, 459-461 (Ch. Div. 1954), aff'd 16 N.J. 454 (1954). And see, McCann v. Biss, 65 N.J. 301, 310 (1974).
From our examination of the proofs adduced by the parties we conclude that the loss, if any, which the Melveneys suffered and the loss, if any, which Sogorka suffered were occasioned solely as the result of legitimate competition. See George F. Hewson Co. v. Hopper, 130 N.J.L. 525 (E. & A. 1943). We note, particularly, that in the course of their competitive bidding for the property both the Melveneys and Sogorka discussed their respective positions with Mrs. McCrane  Sogorka directly and the Melveneys through Mrs. Melveney's father.[5] The clear inference is that they understood that their continued negotiations with O'Donnell were fully sanctioned by the McCranes.
In light of our disposition of this appeal on what we consider to be the main issue in the case, we find no occasion for discussing any of the additional points suggested by the parties.
This court previously denied a motion by the Melveneys to suppress the reply brief for O'Donnell to the answering brief filed for the Melveneys. In denying that motion the court stated that "The issue of the propriety of including in the reply brief Rules 23(c) and (e) of the N.J. Real Estate Commission is deferred until final disposition of this appeal." Reference in the reply brief to these rules, see N.J.A.C. 11:5-1.23(c) and (e), was entirely proper. The Commission is a state administrative agency empowered to "promulgate necessary rules and regulations." *464 N.J.S.A. 45:15-6. As pointed out in Rutgers Council v. N.J. Bd. of Higher Ed., 126 N.J. Super. 53 (App Div. 1973):
It is generally recognized that, within their allotted sphere, rules and regulations of a state administrative agency, duly promulgated under properly delegated powers, have the force and effect of law. State v. Atlantic City Electric Co., 23 N.J. 259, 270 (1957). It may reasonably be inferred from this principle that rules have a binding effect on all persons subject to them. They must be obeyed. [at 63]
See also, Hamilton v. N.J. Real Estate Comm'n, 117 N.J. Super. 345 (App. Div. 1971). We find no special need to refer to the rules quoted in the reply brief for O'Donnell. We note, however, that they accord with the basic principles governing the fiduciary relationship between a licensee (real estate broker) and his client which we have set forth in this opinion.
Accordingly, the judgment under review is reversed and the matter is remanded to the trial court for the entry of judgment in favor of defendant Bertha M. O'Donnell and against plaintiffs Kenneth A. Melveney and Natalie Melveney and defendant Franklin D. Sogorka.
NOTES
[1] Her dealings were with Mrs. McCrane because Mr. McCrane "was failing rapidly in health, and he couldn't talk at that time."
[2] As against Sogorka the amended complaint sought, in brief: a determination that the Melveneys had an interest in and claim to the property superior to that, if any, of Sogorka; the cancellation of record of a contract for the sale of the premises, dated December 29, 1971, allegedly filed by Sogorka and damages.
[3] This resulted from a ruling by the trial judge which, in effect, allowed an amendment of "the pretrial order and pleadings to conform with the proofs in the case."
[4] For failure to file a trial brief with the court prior to commencement of trial as required by the pretrial order, the court required counsel for O'Donnell to pay the sum of $300 to the County Clerk. The record before us fails to disclose any appeal from that determination. That matter is, accordingly, not properly before us.
[5] In a "Certified Statement" of July 28, 1972, Mr. Melveney states in part: "On or about November 30, 1971, while visiting my father-in-law's house, Joseph Ferrarro, Mrs. O'Donnell contacted us [him and his wife] and informed us that the subject premises were to be sold to another party, defendants Sogorka. Whereupon, Mr. Ferraro immediately contacted defendants McCrane and worked out an agreement by which we were to purchase the subject premises for $43,000."