573 P.2d 899

Cary MARMIS and Jerome S. Sonenblick, dba Chaparral Realty, Appellants,

v.

The SOLOT COMPANY, an Arizona Corporation, Donald Hartman and Betty Hartman, husband and wife, Hugh Rodney and Evelyn Rodney, husband and wife, Appellees.

No. 2 CA–CIV 2337.

Court of Appeals of Arizona, Division 2.

Nov. 3, 1977.

Rehearing Denied Dec. 19, 1977.

Review Denied Jan. 17, 1978.

Schorr & Leonard, P.C. by David J. Leonard, Tucson, for appellants.

Chandler, Tullar, Udall & Redhair by D. B. Udall, Tucson, for appellees.

## OPINION

HATHAWAY, Judge.

Appellants (Chaparral) sued appellees (Solot), real estate agents for the Gollob Estate, for breach of fiduciary obligations and for tortious interference in connection with appellants' unsuccessful attempt to purchase realty from the estate. Chaparral was awarded a jury verdict in the sum of $50,000 on their tortious interference with contract theory. Judgment notwithstanding the verdict was entered against them, hence this appeal. Chaparral contends that the evidence sustained the verdict and justified submission to the jury of their fiduciary duty theory and instruction on punitive damages. We disagree.

The property in question was listed exclusively with Solot by the Southern Arizona Bank & Trust Company, executor of the Estate of Magdalena Gollob. Solot was instructed to place the property in Multiple Listing Service of Tucson to obtain maximum exposure for it. The service sends the listing to all participating brokers in Tucson, who may work on a co-brokerage basis with Solot. The listing agreement provided: "sale subject to court approval."

Donald Hartman, a Solot Company salesman, substituted an offer by a Mr. DeLarco, which was declined. Darrell Parrish, another Solot salesman, advised Chaparral of the DeLarco offer. Chaparral offered the listed price, $195,000, and their offer was submitted by Solot to the executor which accepted it on condition that should court approval of the sale be necessary, the seller was given 5 days thereafter to accept the offer. Chaparral was notified that the offer would be submitted for court approval. Chaparral heard that DeLarco planned to bid through Solot and appellant Sonenblick (a partner in Chaparral) protested to Ben Shein, Solot's vice president, that this would be a conflict of interest. Sonenblick testified that Shein agreed and assured him that Solot would not bid on behalf of DeLarco.

Hugh Rodney, Solot's designated broker, contacted an attorney, Mr. Rosen, to represent DeLarco at the hearing. Rosen was to handle bidding there for a fee of $100. Rodney prepared a bidding sheet setting forth precomputed bidding increments and furnished it to Rosen for use at the hearing. Solot did not prepare a "bid list" for Chaparral because, as explained by Solot personnel, they were reluctant to make such recommendation to Mr. Sonenblick, an attorney experienced in the real estate field. At the court hearing, Rosen appeared for DeLarco and Sonenblick appeared for Chaparral. After a number of bids were submitted by both sides, the property sold to DeLarco for the sum of $222,000.

Chaparral had co-brokered with Solot on a prior transaction involving a gas station in which the real estate commission was shared. Sonenblick testified that at that time the parties agreed to share commissions on an equal basis in the future. However, Parrish denied that he had made such an agreement. The testimony appears to be in dispute as to such an agreement.

We first consider the claim that the evidence was sufficient to justify the verdict against Solot for tortious interference with Chaparral's economic relations. In other words, Chaparral contends Solot is responsible for and consequently liable for the loss of their contract which had been created when their initial offer to purchase had been accepted. To sustain this position Chaparral must show: (1) the existence of a contract; (2) the defendant's knowledge thereof; (3) a breach of the contract induced by the defendant; (4) the absence of privilege or justification; and (5) damages. *Middleton v. Wallichs Music and Entertainment Co., Inc.,* 24 Ariz.App. 180, 536 P.2d 1072 (1975). It is undisputed that Solot was the broker engaged by the seller to sell the property. As listing broker for the seller, Solot occupied a confidential and fiduciary relationship with the seller and was thereby held to the highest ethical standards of fairness and honesty. *Ornamental and Structural Steel, Inc. v. BBG, Inc.,* 20 Ariz.

App. 16, 509 P.2d 1053 (1973); *Baker v. Leight*, 91 Ariz. 112, 370 P.2d 268 (1962). For Chaparral to establish a prima facie case, they must first establish the existence of a valid contractual relationship or business expectancy. *Pre-Fit Door, Inc. v. Dor-Ways, Inc.*, 13 Ariz.App. 438, 477 P.2d 557 (1970).

As was said in 45 Am.Jur.2d, Interference, § 12 (1969):

"Before recovery can be had for interference with prospective business relations or for preventing a contract, it must appear that a relationship or contract would otherwise have been entered into. It is not necessary that it be absolutely certain that contracts would have been made were it not for the interference. Reasonable assurance thereof in view of all the circumstances is sufficient. *However, substantial damages cannot be recovered from one who interferes to prevent another from securing a contract for which he has bid, where the person receiving the bids has the right to reject any bid, so that there is nothing to show that the contract would have been secured in the absence of interference.*" (Emphasis added)

 The listing was conditioned upon "sale subject to court approval." Chaparral acknowledged in their deposit receipt and agreement tendering their initial offer the conditional nature of any acceptance. Furthermore, since the real estate was being sold subject to court confirmation, A.R.S. § 14–3504 and § 14–3506(A), they knew any confirmation hearing could well develop into a bidding on the property by others. As it turned out, Chaparral was outbid and we find nothing justifying an expectancy of purchasing the property for the amount of their initial offer. Any "expectancy" was clearly conditioned upon the absence of other bidders and upon court approval, and if anything, amounted only to a hope. Any efforts by Solot to obtain a better price were only in performance of its obligations to the seller and the broker cannot be penalized for fulfillment of those duties. Tortious interference does not occur through lawful competition. *Melveney v. McCrane*, 138 N.J.Super. 456, 351 A.2d 385 (1976).

When the bidding began, and Chaparral had no right to expect that it wouldn't, the only way they could lose the property was to stop bidding. When they made a business judgment to stop at a certain level, they were in no position to blame anyone else for that decision. The complaint that the figures on Rosen's bidding sheet "intimidated" is of no avail. Even if the representative from Solot who was dealing with DeLarco had intended to "bluff" appellants by use of the bidding sheet, the result was to obtain, through vigorous competitive bidding, a higher price than appellants had bid initially, thereby benefitting the seller. Cf. *Melveney v. McCrane*, supra.

 It is clear that a fiduciary relationship arose between Solot and the Southern Arizona Bank & Trust Company as executor-trustee. Having undertaken to sell the property for its principal, Solot was obliged to effect a sale to the best advantage of the seller, i. e., on the best terms and at the best price obtainable. *Vivian Arnold Realty Co. v. McCormick*, 19 Ariz.App. 289, 506 P.2d 1074 (1973). Yet, Chaparral contended Solot's position as a fiduciary was compromised and it attempted to serve two masters by entering a fiduciary relationship with Chaparral, a prospective buyer. The undertaking of such a dual representation of conflicting interests, without the knowledge or approval of the competing principals, would, of course, not be countenanced.

 The record does not support Chaparral's argument that Solot had undertaken to serve two masters, after Chaparral's initial offer was rejected by the court when a higher bid was received. It is true that co-brokerage agreements can give rise to something in the nature of "joint ventures," with concomitant fiduciary obligations between the joint venturers. *Gibson v. W. D. Parker Trust*, 22 Ariz.App. 342, 527 P.2d 301 (1974); *Nutter v. Bechtel*, 6 Ariz.App. 501, 433 P.2d 993 (1967). It is further true that these fiduciary obligations require "good faith," "loyalty," "fairness," and "honesty," between the joint venturers. See *Ghiz v.*

*Millett,* 71 Ariz. 4, 222 P.2d 982 (1950). However, the extent of the obligations between joint venturers and the termination of that joint venture must be determined from the contract of the parties and the nature of the joint venture. See *Tiffany Construction Company v. Hancock & Kelley Construction Company,* 24 Ariz.App. 504, 539 P.2d 978 (1975). *Sind v. Pollin,* 356 A.2d 653 (D.C.1976); *Ghiz v. Millett,* supra.

Here, the agreement between Chaparral and Solot only created an obligation on the part of Solot to split its commission from the estate with Chaparral, if Chaparral's specific offer was accepted. The acceptance of that offer was in turn conditioned upon court approval.

■ At this point it is important to reiterate the obligations growing out of the Solot brokerage relationship with its seller, the estate, and Chaparral's obligation to that same seller as a "co-broker." Both Solot and Chaparral owed an overriding obligation to their seller to obtain the highest and best price for the listed property. See *Vivian Arnold Realty Co. v. McCormick,* supra; *Haymes v. Rogers,* 70 Ariz. 257, 219 P.2d 339 (1950). This overriding obligation of Chaparral was in direct conflict with its interest as a purchaser of the same property. However, this conflict was permissible since there had been full disclosure to the seller and the seller had agreed to accept that relationship based upon the offer of purchase, subject, of course, to court approval. See *Ornamental and Structural Steel, Inc. v. BBG, Inc.,* supra.

■ At this point, had Solot attempted to renege on its agreement and split a commission with Chaparral by obtaining another buyer for the property at the same price offered by Chaparral, Solot would obviously be in violation of its duty of fair dealing with its joint venturer, Chaparral, giving rise to a breach of the fiduciary relationship between them. However, the obligation to deal fairly with Chaparral could not legally override Solot's supreme obligation to the seller to obtain the highest and best price for the property. For example, we do not believe Solot would be liable to Chaparral

for any breach of its fiduciary obligation if, after Chaparral's offer had been submitted to the seller, Solot submitted a higher offer from a different purchaser.

■ This brings us to the crux of the matter here. Chaparral's initial offer was not accepted, it being rejected as a matter of law when the court accepted a higher bid on the property. A.R.S. § 14–3506(D). Once the initial offer creating the joint venture agreement between Solot and Chaparral was rejected, the relationship of co-brokers between Solot and Chaparral must likewise have been terminated.

■ Normally, a joint venture agreement can be terminated according to the terms of the contract, by mutual consent, or where the purposes of the agreement have been accomplished or become impractical. See *Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co.,* 209 F.2d 917 (10th Cir. 1954); *Sind v. Pollin,* supra; *Maimon v. Telman,* 40 Ill.2d 535, 240 N.E.2d 652 (1968). In our opinion, to continue the relationship of co-brokers between Solot and Chaparral after Chaparral's initial offer to purchase was rejected, would be impractical. Once the offer was rejected, and bidding ensued, Solot's obligation to obtain the highest and best price for the seller immediately came back into existence. On the other hand, Chaparral's interest as a prospective purchaser at this point was naturally to obtain the property at the lowest price possible. To legally hitch these conflicting interests in tandem through the entire bidding process is not only impractical but completely unworkable. While we are able to reconcile Chaparral's conflicting interest as both a buyer and a co-broker (with the obligation to obtain the best and highest price for the seller) at the initial offer stage, to require Chaparral to maintain that posture through the spirited bidding process does violence to the realities of the situation. We therefore hold that once the court rejected Chaparral's initial offer of $195,000.00, Chaparral and Solot were no longer joint venturers and all fiduciary obligations between them ended. We find support for this position in

those cases which hold that where a joint venture has been formed for the purpose of submitting a bid, the venture ends when the bid is rejected. See *Electrical Contractors, Inc. v. Goldberg & O'Brien Electric Co.*, 29 Ill.App.3d 819, 331 N.E.2d 238 (1975); *Southwest Drayage Company v. Crawford Moving Vans, Inc.*, 377 S.W.2d 293 (Mo.1964). (Both cases involved bidding on construction contracts.)

Therefore, taking as a fact that Solot's aiding DeLarco to acquire the property "intimidated" Chaparral from bidding beyond the $222,000 figure, such action could not result in a breach of any fiduciary relationship existing between Solot and Chaparral. Since Chaparral has not pointed to any action by Solot prior to the rejection of Chaparral's offer which caused it harm, the trial court correctly directed a verdict in Solot's favor on the theory of breach of fiduciary duties.

Judgment affirmed.

HOWARD, C. J., and JACOBSON, J., concur.