

FILED

OCT 22 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. AZ-17-1308-BaFS |
| LE KWAK LE and VINH TRONG LE, | Bk. No. 2:11-bk-05893-MCW |
| Debtors. | Adv. No. 2:11-ap-00727-MCW |
| LE KWAK LE; VINH TRONG LE, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| THOMAS Q. HUYNH, | |
| Appellee. | |

Argued and Submitted on June 21, 2018
at Phoenix, Arizona

Filed – October 22, 2018

Appeal from the United States Bankruptcy Court
for the District of Arizona

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Madeleine C. Wanslee, Bankruptcy Judge, Presiding

---

Appearances:     Christopher James Piekarski of Piekarski & Brelsford, P.C.
argued for appellants Le Kwak Le and Vinh Trong Le;
Neal H. Bookspan of Jaburg & Wilk, P.C. argued for
appellee Thomas Q. Huynh.

---

Before: BASON,[**] FARIS, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Le Kwak Le ("Ms. Le") and Vinh Trong Le ("Mr. Le") ("Debtors")
appeal from the bankruptcy court's $864,000 judgment in favor of appellee
Thomas Q. Huynh ("Mr. Huynh") under § 523(a)(6).[1]  In an earlier appeal
(BAP No. AZ-15-1364-JuFL), we vacated a prior judgment in the same
dollar amount (the "Prior Judgment") and remanded for the bankruptcy
court to address the threshold issue under § 523(a)(6) of what torts, if any,
were committed under Arizona law.  On remand, the parties all requested
that the bankruptcy court *not* reopen trial, and instead decide the issues on

---

[**] Hon. Neil W. Bason, United States Bankruptcy Judge for the Central District of
California, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules
of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of
Civil Procedure.

the basis of the evidence adduced at the prior trial and the parties' briefs. Debtors argue that the bankruptcy court erred in (a) determining that Ms. Le's conduct was tortious under Arizona law, (b) determining that her conduct was "willful" and "malicious" within the meaning of § 523(a)(6), (c) calculating Mr. Huynh's damages, and (d) entering judgment not just against Ms. Le but also against her husband and co-Debtor, Mr. Le. We AFFIRM.

## FACTUAL BACKGROUND

Mr. Huynh and Ms. Le were co-owners of a business, Power Car Wash and Foodmart, LLC (the "LLC"), which operated a Chevron-branded gas station, car wash, and market. The LLC leased the real property on which it operated the business from Mr. Huynh.

Ms. Le shut down the business without notice to Mr. Huynh, resulting in Chevron de-branding the gas station. Mr. Huynh attempted to reopen the business with Chevron, find another franchisor, or continue the business as an unbranded gas station, but those efforts were unsuccessful and the business failed.

Ms. Le blamed other factors for the LLC's failure, including competing gas stations, and nearby construction that impeded access to the premises. Ms. Le also reasoned that she was justified in removing the market's inventory because she had purchased that inventory in her individual capacity when she became co-owner of the business and she

3

was worried that she would lose that investment when Mr. Huynh, acting as landlord, gave notice that he would terminate the LLC's lease for nonpayment of rent.

The bankruptcy court was not persuaded by Ms. Le's explanations. The court found that she not only removed inventory but also removed the gas, equipment, computer, and books and records of the LLC; and when Mr. Huynh found out what happened, Ms. Le locked him out of the premises.

The court also found that Ms. Le's actions caused the gas station to go "dark," and prevented Mr. Huynh from reopening it soon enough to persuade Chevron not to terminate the LLC's franchise. That, in turn, effectively prevented Mr. Huynh from obtaining a new franchise to lease the gas station. Although he attempted to operate the gas station without a franchise, he was unsuccessful and the business ultimately failed.

The bankruptcy court found that Ms. Le's conduct caused Mr. Huynh to suffer $864,000 in damages. The bankruptcy court also found that Ms. Le's conduct was willful and malicious within the meaning of § 523(a)(6), and entered the Prior Judgment against both Debtors.

Debtors appealed the Prior Judgment. We vacated it and remanded because the bankruptcy court had not addressed the threshold issue of whether Ms. Le's conduct was tortious under Arizona law. On remand, the bankruptcy court determined that the evidence at trial was sufficient to

establish that Ms. Le had committed at least one tort under Arizona law - indeed, four separate torts. It reinstated the judgment against both Debtors (the "Amended Judgment"). Debtors timely appealed from that judgment.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Whether procedural errors by the parties require summary affirmance, reversal, or dismissal.

2. Whether the bankruptcy court erred when it determined that: (a) Ms. Le committed at least one tort under Arizona law, (b) Ms. Le's conduct was "willful" and "malicious," (c) damages were $864,000, and (d) the judgment should include Mr. Le.[2]

## STANDARDS OF REVIEW

The trial court's compliance with an appellate court's mandate on remand is reviewed de novo. *United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir. 2000). We review the bankruptcy court's factual findings, including findings about a debtor's intent, for clear error. *See Beauchamp v. Hoose (In re Beauchamp),* 236 B.R. 727, 729 (9th Cir. BAP 1999). A bankruptcy court's factual findings are not clearly erroneous unless they

---

[2] Mr. Huynh asserts that the only issue is whether Ms. Le's conduct was tortious. Nothing in our mandate on the prior appeal imposed any such limitation of issues.

5

are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). On appeal, we give "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 427 (9th Cir. BAP 2002). "This deference is also given to inferences drawn by the trial court." *Id.*

"The bankruptcy court's conclusions of law," including those pertaining to nondischargeability and interpretation of state law, are reviewed de novo. *Id.* In general, we also review de novo the bankruptcy court's application of the legal standard in determining whether a debt resulting from debtors' wrongful conduct is dischargeable as a willful and malicious injury. *Id.; cf. U.S. Bank N.A. v. Vill. at Lakeridge, LLC,* 138 S. Ct. 960, 967 (2018) (standard of review applicable to mixed questions of fact and law).

## DISCUSSION

Before we address the merits of the parties' arguments on appeal, they raise a number of procedural arguments, which they claim should dispose of this appeal. We will address each procedural argument in turn.

1. **Procedural Issues**

    A.  **Debtors' Failure to Comply With Rule 8009 Limits Our Review, But Does Not Prevent It**

    Rule 8009 requires an appellant to file: (I) "a statement of the issues to

be presented," (ii) "a designation of the items to be included in the record on appeal," and (iii) relevant transcripts. Rule 8009(a)(1)(A) and (b)(1)(A). Mr. Huynh argues that this appeal should be dismissed because Debtors failed to file any of those things, even though we reminded Debtors of these requirements twice. But in the circumstances of this appeal, we will not summarily affirm or dismiss on this ground.

### i. Statement of Issues

We have held that arguments not raised in the statement of issues are waived. *See Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply Inc.),* 184 B.R. 74, 79 (9th Cir. BAP 1995); *Woods v. Pine Mountain, Ltd. (In re Pine Mountain, Ltd.)*, 80 B.R. 171, 173 (9th Cir. BAP 1989). But the Ninth Circuit has cautioned that "Rule 8006 [the predecessor to Rule 8009] exists to ensure the adequacy of the record, and does not affect the ability of any party to appeal findings or conclusions of the bankruptcy court." *Office of the U.S. Tr. v. Hayes (In re Bishop, Baldwin, Rewald, Dillingham, & Wong, Inc.),* 104 F.3d 1147, 1148 (9th Cir. 1997) (citations omitted). Further, we have been willing to entertain arguments not specified in the statement of issues when a complete understanding of the case can be discerned from the briefs and the record, and prejudice has not been shown. *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 166 (9th Cir. BAP 1999); *see also Turner v. Marshack (In re Turner),* 186 B.R. 108, 112, 117 (9th Cir. BAP 1995).

7

Mr. Huynh asserts that Debtors' failure to file a statement of issues has prejudiced him because he was left "hamstrung to try to guess what, exactly, this Second Appeal would be premised upon." We find this argument unpersuasive for at least two reasons.

First, Debtors did not file a statement of issues *at all* - as opposed to filing a statement but omitting an issue - so Mr. Huynh has been on notice of this defect from the early stages of this appeal. Second, we granted Mr. Huynh's request for additional time to respond to the issues included in Debtors' opening brief. Mr. Huynh has not explained how he is still prejudiced, despite that additional time.

### ii.    Designation of Record

Similarly, we find no prejudice to Mr. Huynh from Debtors' failure to file a designation of record. Again, Mr. Huynh was on notice of this defect for several months. We gave him additional time to address any deficiencies in Debtors' filings but he never sought to file a supplemental designation and he has not established any prejudice.

### iii.    Transcript of Trial

Mr. Huynh cites authority that this panel can summarily dispose of or dismiss this appeal due to Debtors' failure to provide the trial transcript. *See N/S Corp. v. Liberty Mut. Ins. Co.,* 127 F.3d 1145, 1146 (9th Cir. 1997).

It is true that it is appellants' burden, in the first instance, to provide the complete record. *Kritt v. Kritt (In re Kritt)*, 190 B.R. 382, 387 (9th Cir.

8

BAP 1995). When appellants have omitted something from the excerpts of record (the "Excerpts"), we are entitled to presume that they do not regard the missing items as helpful to their appeal. *Gionis v. Wayne (In re Gionis)*, 170 B.R. 675, 680-81 (9th Cir. BAP 1994), *aff'd*, 92 F.3d 1192 (9th Cir. 1996) (table); *McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 416-17 (9th Cir. BAP 1999). Furthermore, in order to review a factual finding for clear error, the Excerpts usually should include the entire transcript and all other relevant evidence considered by the bankruptcy court. *See Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*, 126 B.R. 63, 68 (9th Cir. BAP 1991); *Burkhart v. Fed. Deposit Ins. Corp. (In re Burkhart)*, 84 B.R. 658, 661 (9th Cir. BAP 1988). But public policy favors disposing of cases on their merits instead of procedural grounds. *See Foman v. Davis,* 371 U.S. 178, 181 (1962). In the particular circumstances of this appeal, our review is limited but not impossible without the trial transcript.

In addition, we have exercised our discretion to review the copy of the trial transcript that is available on the bankruptcy court's docket. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.),* 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood),* 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). Based on that review, formal inclusion of the transcript in the Excerpts would not change our disposition of this appeal.

For all of the foregoing reasons, we will not dismiss or summarily

dispose of this entire appeal due to the lack of a statement of issues, designation of the record, or trial transcript.

**B.** **References to Documents That Were Not Introduced at Trial Must be Stricken**

Debtors included in the Excerpts various documents that were filed in connection with their motion for summary judgment, but there is no indication that those documents were accepted into evidence at trial. Mr. Huynh argues that such material must be stricken from the Excerpts. We agree. *See Nunez v. Parker (In re Shaver Lakewoods Dev. Inc.)*, BAP No. EC-15-1311-JuKuMa; 2016 WL 7188660, at *4 (9th Cir. BAP Nov. 29, 2016) (citing *Heath v. Helmick*, 173 F.2d 156 (9th Cir. 1949)); *see also Lowry v. Barnhart*, 329 F.3d 1019, 1025 (9th Cir. 2003).[3]

**C.** **Mr. Huynh's Failure to Seek Formal Amendment of the Complaint, to Include Claims for Tortious Conduct Under Arizona Law, is Not Fatal to the Amended Judgment**

On remand, the bankruptcy court directed the parties to file briefs to identify "what state law torts, if any," the evidence already in the record would support and "whether the Court should reopen evidence in order for either party to present additional testimony or other evidence." Mr. Huynh's brief argued, with specific references to evidence at trial, that

---

[3] Similarly, Mr. Huynh requests that this panel take judicial notice of the state court action that he filed against Debtors, but he has not provided us with a copy of any documents from that action or explained why it is relevant. His request is denied.

10

the existing record supported five Arizona torts. Alternatively, Mr. Huynh requested an opportunity to present additional evidence regarding those torts if the court determined the record was insufficient.

Debtors' brief on remand argued that at trial they did not know what torts were being asserted. They pointed out that Mr. Huynh's complaint did not assert any specific claims under Arizona tort law or allege the elements of each tort, as required by Civil Rule 8 (made applicable by Rule 7008). Debtors also argued that the existing record at trial was inadequate to support any of the tort claims asserted by Mr. Huynh.

The bankruptcy court ruled that the existing trial record was sufficient to establish four of the tort claims asserted by Mr. Huynh. It effectively treated Mr. Huynh's remand brief as an informal motion to amend the complaint to conform to the evidence at trial, and granted that motion. *See* Civil Rule 15(b)(2) (made applicable by Rule 7015) ("A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue."). In its oral ruling, the bankruptcy court stated:

> The Court instructed [Mr. Huynh] to file an opening brief and the [Debtors] to file a responsive brief addressing the potential torts identified by [Mr. Huynh]. Unfortunately, [Debtors'] brief seemed to focus on the adversary complaint instead of dealing with the evidence presented at trial and the specific torts identified by [Mr. Huynh].
> * * *

11

The Court finds and concludes, based on the briefs filed and the citations to the record made therein, that [Mr. Huynh] has established four state law tort causes of action that are necessary to a finding of nondischargeabilty under § 523(a)(6) for willful and malicious conduct.

* * *

The Court finds **the pleadings conform to the facts** that came out at trial and in this case. [Tr. 9/29/17, pp. 3:17-23, 4:4-8, 15:7-8 (emphasis added).]

On *this* appeal, Debtors argue that, under principles of "notice pleading," they were deprived of a sufficient opportunity to defend themselves. Debtors' argument is flawed.

First, Civil Rule 15 specifically contemplates that an unpleaded issue may be raised if it "conform[s] to the evidence" at trial. Civil Rule 15(b)(2). Second, although Debtors argued on remand that the evidence at trial was inadequate, the bankruptcy court disagreed, and Debtors did not argue in the alternative that they should be able to present more evidence in their defense. To the contrary, Debtors opposed reopening the trial, arguing that this "would be grossly unfair to [Debtors] who have incurred a small fortune in attorney's fees, court costs, expert witness fees and wage garnishments."

For these reasons, we hold that Debtors elected to proceed on the existing trial record, and have waived and forfeited their argument that the lack of a formal motion to amend the complaint is fatal to the Amended

12

Judgment. *See generally Hamer v. Neighborhood Hous. Servs.*, 138 S. Ct. 13, 17 n.1 (2017) (distinguishing forfeiture and waiver); *Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932 (2015) (discussing implicit waiver).

Alternatively, we have used our discretion to review the trial transcript and the limited documents that are available to us. Those things would not alter our conclusions, for the reasons discussed below.

### D.     Conclusion as to Procedural Issues

For all of the foregoing reasons, we conclude that none of the procedural issues raised by the parties warrants a summary affirmance, reversal, or dismissal of this appeal. We turn now to the merits.

### 2.     The Record Supports the Bankruptcy Court's Entry of the Amended Judgment Under § 523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The willfulness and malice requirements are analyzed separately and both elements must be met. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010); *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (9th Cir. 2002).

Whether a debtor acted willfully is a subjective inquiry: the "willful injury" requirement is met only when the debtor has a "subjective motive to inflict injury" or when the debtor believes that injury is "substantially certain to result" from his or her own conduct. *In re Ormsby*, 591 F.3d at

13

1206. Further, when determining the debtor's intent under § 523(a)(6), there is a presumption that the debtor knows the natural consequences of his or her actions. *Id.*

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Id*. at 1207. "Malice may be inferred based on the nature of the wrongful act." *Id.*

"It is well settled that a simple breach of contract is not the type of injury addressed by § 523(a)(6)." *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992). But when an intentional breach of contract is accompanied by tortious conduct that results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6). *Lockerby v. Sierra*, 535 F.3d 1038, 1040-42 (9th Cir. 2008) (citing *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205 (9th Cir. 2001)).

Under *Jercich*, courts are instructed first to consider whether the debtor's conduct was "tortious," and then to ask whether the debtor's conduct was both "willful" and "malicious." *In re Jercich*, 238 F.3d at 1206-09. Whether a breach of contract is tortious is determined under state law. *Lockerby*, 535 F.3d at 1041 ("[C]onduct is not tortious under § 523(a)(6) simply because injury is intended or 'substantially likely to occur,' but rather is tortious if it constitutes a tort under state law.").

**A.** **Debtors Have Not Established Error in the Bankruptcy Court's Determination That Ms. Le Intentionally Interfered With Mr. Huynh's Business Relations Under Arizona Law**

On remand, the bankruptcy court made detailed findings of fact and conclusions of law on the record, as permitted by Rule 7052 (incorporating Civil Rule 52(a)(1)). Debtors do not dispute the bankruptcy court's summary of the elements of a claim for intentional interference with business relations:

> [1] [T]here must be the existence of a valid contractual relationship or business expectancy. [2] There must be knowledge of the relationship or expectancy on the part of the interferer. [3] There must be intentional interference inducing or causing a breach or termination of the relationship or expectancy. [4] There must be resultant damage to the party whose relationship or expectancy has been disrupted and [Debtor(s)] must have acted improperly. [Tr. 9/29/17, p. 12:14-13:2 (citing *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 (Ariz. 2005); *Antwerp Diamond Exchange of Am., Inc. v. Better Business Bureau of Maricopa Cty.*, 130 Ariz. 523, 530 (1981)).]

To be the foundation of a claim for tortious interference, a business expectancy must be more than a mere "hope." *Dube v. Likins,* 216 Ariz. 406, 413 (Ct. App. 2007) (citation omitted). There must be "a colorable economic relationship between the plaintiff and a third party with the potential to develop into a full contractual relationship." *Id.* at 414 (citations and internal quotation marks omitted).

15

The bankruptcy court determined that Mr. Huynh established each of these elements at trial.

### i. Existence of a valid contractual relationship or business expectancy

As conceded in Debtors' opening brief on this appeal, they knew that the primary contractual relationship or business expectancy at issue involved Chevron. There was evidence that Mr. Huynh had a contractual and business relationship with Chevron that predated Debtors' involvement with the business, both through the LLC and directly as the owner of the real estate on which it operated and as a guarantor.

Mr. Huynh testified that he purchased the gas station property in 2004 when it was already operating under the Chevron brand. He and his wife guaranteed the LLC's debt to Chevron, and if the business had not been precipitously shut down and debranded he expected that his business relationship with Chevron could have continued, either through a new LLC or in some other manner. Tr. 1/21/15, pp. 28:4-6, 29:8-31:9, 82:17-20, 121:22-122:19, & 127:17-128:8. The bankruptcy court found that Mr. Huynh "had a valid contractual relationship and business expectancy through both the LLC and also through the LLC's rental of the real property from [Mr. Huynh]." Tr. 9/29/17, p. 13:9-12.

Debtors argue in their opening brief on this appeal that Mr. Huynh was responsible, and they were not, for "securing the station and

maintaining Chevron branding." But that proves the point. Mr. Huynh is the one who had an expectation of continuing his relationship with Chevron. "It is not necessary that it be absolutely certain that contracts would have been made were it not for the interference. Reasonable assurance thereof in view of all the circumstances is sufficient." *Marmis v. Solot Co.,* 117 Ariz. 499, 502 (Ct. App. 1977).

### ii. Knowledge of the relationship or expectancy on the part of the interferer

Ms. Le knew of Mr. Huynh's business expectations. She was "aware that [Mr. Huynh] had purchased the underlying real estate and was renting the real property to the LLC," and "knew of [Mr. Huynh's] relationship to the LLC as both a fellow member and as the landlord." Tr. 9/29/17, p. 13:7-16. "Ms. Le understood the business relationship held by [Mr. Huynh] with Chevron through the LLC." *Id.,* p. 14:10-11.

Again, there is support for these findings. Mr. Huynh testified that he gave Ms. Le explicit notice of the importance of the relationship with Chevron. Tr. 1/21/15, pp. 54:24-55:6 & 63:2-4.

### iii. Intentional interference inducing or causing a breach or termination of the relationship or expectancy

The bankruptcy court determined that Ms. Le's taking of the inventory, computer, and books and records, among other acts, amounted to an intentional interference that caused a breach or termination of

17

Mr. Huynh's business relationship and expectancies. Tr. 9/29/17, p. 13:19-14:3.

> The intentional interference is also demonstrated by Ms. Le's admission that she knew that shutting down the business would hurt [Mr. Huynh] financially. She also admitted knowing that [Mr. Huynh] had a loan on the real property where the gas station was located and that **there were other options other than to simply unilaterally close the business**.
> ***
> Further, **she knew that her actions would result in the store going dark and the potential de-branding of the gas station from the Chevron brand name**. [Tr. 9/29/17, p. 14:4-14 (emphasis added).]

Debtors have not shown any clear error in these findings. The evidence fully supports the finding of intent and causation.

### iv.   Improperness of Debtor(s)' conduct, and damage to Mr. Huynh resulting from interference

The bankruptcy court found that "Ms. Le acted improperly" and that her conduct "directly caused the gas station to shut down, causing financial harm and other resultant damage to [Mr. Huynh]." Tr. 9/29/17, p. 14:14-17. There is ample support for this finding. For example, Ms. Le admitted that she knew her acts would harm Mr. Huynh financially. There was also evidence at trial that Ms. Le at first promised to provide Mr. Huynh with the keys to the premises and equipment but that, after he flew from the San Francisco Bay Area to Phoenix to meet with her, she refused to turn

over those keys, or provide him with access to the LLC's computer or books and records, and eventually when he gained access to the premises he found that the fixtures and store had been "trash[ed]." Tr. 1/21/15, pp. 62:11-67:23, 173:18-20, 175:22-176:16, 179:11-13, 213:24-214:9.

Debtors contend that the bankruptcy court erred because, they claim, they were not aware of Mr. Huynh's responsibilities in maintaining the Chevron brand. Debtors also contend that the bankruptcy court erred because economic hardship and Mr. Huynh's threat to evict the LLC supposedly were the true causes of the LLC shutting down and Chevron debranding the business.

But the bankruptcy court's findings quoted throughout this memorandum support contrary conclusions. There is support for its findings that precipitously shutting down the business without prior notice, withholding keys, removing the business's computer, "trash[ing]" the interior, and other acts were improper, and were the true causes of the gas station "going dark." It was Ms. Le's actions that prevented Mr. Huynh from being able to reopen the station quickly. All of this damaged Mr. Huynh by ending his valid expectancy, known to Debtors, of a valuable business relationship with Chevron. Where there are two possible interpretations of the evidence, we cannot hold that the bankruptcy court committed clear error by adopting one of them. *See Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 874-75 (9th Cir. BAP 2007)

19

(citing *Anderson v. Bessemer City*, 470 U.S. 564, 573-75 (1985)).[4]

**B.     Debtors Have Not Established Error in the Bankruptcy Court's Findings That the Injury to Mr. Huynh Was "Willful" and "Malicious" Under § 523(a)(6)**

Debtors contend that Ms. Le's conduct fails to support a finding of nondischargeability under § 523(a)(6).  Because Debtors do not assert that the bankruptcy court applied the wrong legal standard, we review the bankruptcy court's factual findings for clear error.

First, as discussed above, Debtors have not established any error in the bankruptcy court's determination that Ms. Le's conduct was "tortious" under Arizona law as required by *Jercich*.  Next, the bankruptcy court found that Ms. Le acted willfully.  The bankruptcy court found that, according to Ms. Le's own admission, "she knew shutting down the business would hurt Mr. Huynh financially," and she also "knew her actions would result in the store going dark and the potential de-branding of the gas station from the Chevron brand name."  Tr. 9/29/17, pp. 14:5-14.

The bankruptcy court also found that Ms. Le acted with malice. Debtors argue that the record does not support a finding of malice and instead reflects that their actions were guided by fear of losing the inventory.  But, the bankruptcy court found that "[g]iven Ms. Le's business

---

[4] We do not address the other torts found by the bankruptcy court because any one tort is sufficient under *In re Jercich,* 238 F.3d 1202.

20

background and experience, including her experiences before her agreements with [Mr. Huynh], Ms. Le's testimony of not fully understanding the ramifications of her actions was not credible." Tr. 9/29/17, p. 15:3-6. We give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses. *Wells Fargo Bank v. Beltran (In re Beltran)*, 182 B.R. 820, 823 (9th Cir. BAP 1995).

In addition, the bankruptcy found that Ms. Le had prevented Mr. Huynh, who lived in another state, from monitoring the business by blocking his access to video surveillance. The bankruptcy court's written order found that this:

> reveals her intent to shut [Mr. Huynh] out of the business, and also to undermine his ability to protect his interest.
>
> * * *
>
> [Ms.] Le's failure to respond to [Mr. Huynh's] Demand Letter [to pay the rent] and instead liquidate assets demonstrates that Ms. Le acted out of anger towards [Mr. Huynh] and with the intent to exclude him from the process. Regardless of her testimony that she interpreted the Demand Letter as a notice of lockout . . . the Court cannot find Ms. Le's actions justified. The totality of Ms. Le's conduct shows that she was angry with [Mr. Huynh], that she intended to exclude him from participating in the business, including whether it should be sold or shutdown . . . . [Order Re: Nondischargeability Of Debt , p. 7:17-27]

Debtors have not established any error in the bankruptcy court's findings that Ms. Le's conduct was "willful" and "malicious" within the

21

meaning of § 523(a)(6).

**C.    <u>Debtors Have Not Established Error in Calculating Damages</u>**

Debtors argue that the bankruptcy court erred in determining Mr. Huynh's damages.  Because this requires a review of the bankruptcy court's factual findings, we review the damages issue for clear error.  Again, Debtors' arguments are not persuasive.

First, the only evidence of damages in the Excerpts was introduced in connection with Debtors' motion for summary judgment (the "MSJ"), which we have stricken.  Without the evidence introduced at trial, we cannot review the bankruptcy court's interpretation of that evidence for clear error.  *See Lowry*, 329 F.3d at 1025; *In re Shaver Lakewoods Dev. Inc.*, 2016 WL 7188660, at *4.

Second, even if we had not stricken this evidence, our examination of the available record reveals that the MSJ evidence was materially different from the trial evidence.  Specifically, the trial transcript reveals that there were changes after the MSJ to Mr. Huynh's damages analysis prepared by Mr. Scott E. Evans (the "Evans Report").

Third, even if we were prepared to search for error in the Evans Report, Debtors' challenges to that report miss the mark.   Debtors assert that Mr. Evans failed to take into consideration the economic hardships the LLC faced and Mr. Huynh's threat of eviction, but our own review of that report shows that he did consider those things.  Debtors also argue that

22

Mr. Evans did not discount lost profit damages by 50% to account for Ms. Le's ownership interest. But this argument incorrectly presumes that Mr. Evans' calculation of damages is based on *the LLC's* future lost profits. In reality, the Evans Report contains projections based on Mr. Huynh's future lost revenues *as landlord* (plus $38,929 in out-of-pocket costs). Mr. Evans compared the actual rents received by Mr. Huynh against the projected rents if the gas station could have been continued or reopened as a Chevron station or the equivalent.

Finally, the bankruptcy court found Mr. Evans' testimony "credible, largely unchallenged by Ms. Le, and uncontroverted." Order re: Nondischargeability of Debt, p. 8:13-14. As an appellate court, we are not to retry issues of fact or supplant our judgment for that of the bankruptcy court. *Smith v. James Irvine Found.*, 402 F.2d 772, 774 (9th Cir. 1968). If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. *In re Hansen*, 368 B.R. at 874-75. We give findings of fact based on credibility particular deference. *Id.*

For all of these reasons, Debtors have not demonstrated any error in the bankruptcy court's calculation of damages.

## D. Debtors Have Waived and Forfeited Any Arguments Distinguishing Mr. Le from Ms. Le

Debtors argue that the bankruptcy court did not make any specific findings about Mr. Le's conduct. They also argue that Ms. Le's subjective

23

intent cannot be imputed to Mr. Le.

It is true that the burden was on Mr. Huynh to prove nondischargeability, and under our precedent Mr. Le himself would have to have the requisite willful and malicious intent under § 523(a)(6) - intent cannot be imputed from Ms. Le. *See Jenkins v. Mitelhaus (In re Jenkins),* BAP Nos. CC-14-1185-PaTaD, CC-14-1258-PaTaD ; 2015 WL 735799 (9th Cir. BAP Feb. 20, 2015) ("Behaviors and outcomes might be imputed, maybe even misrepresentations, but subjective thoughts cannot be.") (quoting *Luc v. Chien (In re Chien),* BAP No. NC-07-1265-JuMkK; 2008 WL 8240422, at *7 (9th Cir. BAP Feb. 7, 2008)); *cf. Sachan v. Huh (In re Huh),* 506 B.R. 257 (9th Cir. BAP 2014).

But the key question is not who had the initial burden of proof. The question is whether issues regarding Mr. Le's intent that were not raised on the prior appeal or on remand can be raised now, on this second appeal. We hold that they cannot.

In the prior appeal we expressly pointed out that although a spouse's subjective intent cannot be imputed to the debtor for § 523(a)(6) purposes, nowhere did Debtors argue that point in the bankruptcy court, or object to the Prior Judgment on that basis, or argue that issue on that appeal. We noted that this issue had been waived for purposes of that appeal. Nothing, however, prevented Debtors from raising this issue on remand. Nevertheless, so far as we can tell from the Excerpts, Debtors did not do so.

24

Mr. Huynh correctly points out that arguments not raised before the trial court are almost never heard on appeal. *See El Paso v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.)*, 217 F.3d 1161, 1165 (9th Cir. 2000) ("This court will only consider new arguments under 'exceptional circumstances'"); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("As a general rule, we will not consider arguments that are raised for the first time on appeal"); *Marx v. Loral Corp.*, 87 F.3d 1049 (9th Cir. 1996).

Debtors have not established sufficient grounds to depart from this policy. They consciously chose not to address this issue before the bankruptcy court, both before and after the prior appeal, and therefore they have waived this issue. Alternatively, by failing to address the issue on remand, despite what we said about it on the prior appeal, Debtors have forfeited it. *See Smith*, 194 F.3d at 1052 (declining to consider arguments that are raised on appeal for the first time); s*ee also Hamer*, 138 S. Ct. at 17 n.1 (distinguishing forfeiture and waiver)*; Wellness Int'l Network, Ltd.*, 135 S. Ct. 1932 (implicit waiver).

**CONCLUSION**

For the foregoing reasons, we AFFIRM.

25